### UNITED STATES v. VASILATOS.
### No. 11109.

United States Court of Appeals
Third Circuit.

Argued Nov. 3, 1953.

Decided Jan. 7, 1954.

Edward E. Dicker, Philadelphia, Pa., for appellant.

W. Wilson White, Philadelphia, Pa. (William B. Taffet, District Counsel, Immigration and Naturalization Service, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Section 180(a) of Title 8 of the United States Code as it existed in 1951, when the events in litigation occurred, made it a felony for a deported alien again to "enter" the United States.[1] The relevant venue statute authorized prosecution at "any place * * * at which the violation may occur * * *." 8 U.S.C. (1946 ed.) § 164. For reenactment, see 8 U.S.C.A. § 1329. Appellant Vasilatos, a Greek seaman, was indicted, tried and convicted under Section 180(a) in the Eastern District of Pennsylvania, it being alleged that he had unlawfully "entered" the United States at the Port of Philadelphia. Throughout the litigation, Vasilatos has challenged the venue, insisting that he did not "enter" the United States at Philadelphia. That issue of venue is the principal question on this appeal.

Vasilatos reached the United States as a member of the crew of a Greek ship, incoming from a foreign voyage. The ship came directly to Philadelphia as its first port of call. At Philadelphia, in accordance with established and familiar procedure of the United States Immigration Service, an immigration officer boarded the ship to interrogate each alien seaman and either to certify that the seaman was entitled to admission on a temporary basis or to order him restrained to the ship during its stay in this country as the facts revealed to the officer in each case should warrant. This officer interrogated Vasilatos who falsely represented that he had never been deported from the United States, thus con-

1. "If any alien [who] has been arrested and deported in pursuance of law * * * enters or attempts to enter the United States * * * he shall be guilty of a felony * * *." 8 U.S.C. (1946 ed.) § 180(a). This penal provision is substantially reenacted in the 1952 Immigration and Nationality Act. See 8 U. S.C.A. § 1326.

cealing a fact which made him ineligible for clearance even on a temporary basis. Thus misled, the Immigration Officer certified Vasilatos as entitled to admission and a twenty-nine day stay with freedom of movement in the United States.

Thereafter, Vasilatos did not leave the ship in Philadelphia but remained continuously on board until the vessel proceeded coastwise to Baltimore. He landed at Baltimore and thereafter remained at large in the United States until his apprehension in Albany, New York about a year later.

This case arose before Congress in the Immigration and Nationality Act of 1952 defined "entry" as "any coming of an alien into the United States from a foreign port or place * * *." 8 U.S.C.A. § 1101(a) (13). The earlier statutes did not define "enter" or "entry". However, the immigration authorities and the courts attempted to achieve a reasonable construction of these words consistent with the sense of the situation.

██ It must have been apparent, long before the fact was emphasized in the 1952 definition, that in a literal and physical sense a person coming from abroad enters the United States whenever he reaches any land, water or air space within the territorial limits of this nation. But the actual clearance of persons who seek admission in regular course is accomplished at designated stations, many of them located as a matter of convenience some distance inside the national boundary. In these circumstances, those who have come from abroad directly to such a station seeking admission in regular course have not been viewed by the courts as accomplishing an "entry" by crossing the national boundary in transit or even by arrival at a port so long as they are detained there pending formal disposition of their requests for admission. United States v. Ju Toy, 1905, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040; Kaplan v. Tod, 1925, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585. The reasonableness of this concept is em-

phasized by the fact that the master of an incoming vessel is under a legal duty to restrict passengers and crew members to the ship pending immigration clearance. 8 U.S.C. (1946 ed.) §§ 146, 147. For reenactment, see 8 U.S.C.A. §§ 1321, 1222. In any event, the view has prevailed with respect to arrivals of the type here involved that freedom from official restraint must be added to physical presence before entry is accomplished. United States v. Lazarescu, D.C.Md. 1952, 104 F.Supp. 771, affirmed, 4 Cir., 1952, 199 F.2d 898; cf. United States ex rel. Schirrmeister v. Watkins, 2 Cir., 1949, 171 F.2d 858.

Taking a contrary position, the defendant would further postpone the occurrence of his entry in legal contemplation until the time when he exercised his freedom from restraint by physically landing at Baltimore. We are not persuaded that this is a necessary or, in the circumstances, even a reasonable view of entry. For that presence in the United States which is essential to entry existed when, and even before, the ship arrived in Philadelphia. No landing was necessary to supply that prerequisite. The other essential factor, freedom from restraint, came into existence when an immigration officer in Philadelphia cleared Vasilatos for a temporary stay in the United States.

██ We have already indicated that the one case squarely in point takes this view. United States v. Lazarescu, supra. And administration of the immigration laws has long proceeded on this theory of entry. Certainly this construction of the words entry and enter is not arbitrary. We see no reason to disturb it. Accordingly we hold that in legal contemplation Vasilatos entered the United States at Philadelphia where by misrepresentation of fact to an immigration officer he caused that official to grant him clearance for a temporary stay with freedom of movement in the United States. It follows that venue was properly laid in the Eastern District of Pennsylvania as the place where the violation occurred.

A separate point is made that there was no proper proof of the *corpus delicti* in that the identity of Vasilatos as a man who had previously been deported was not adequately established. We have examined the record and regard the proof as adequate.

The judgment will be affirmed.