UNITED STATES of America,
Plaintiff-Appellee,

v.

Paul OSCAR, Defendant-Appellant.

No. 73-3606.

United States Court of Appeals,
Ninth Circuit.

May 6, 1974.

Michael J. McCabe (argued), Federal Defenders of San Diego, San Diego, Cal., for defendant-appellant.

Jeffrey F. Arbetman, Asst. U. S. Atty., (argued), Stephen G. Nelson, Asst. U. S. Atty., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before KOELSCH and WRIGHT, Circuit Judges, and BELLONI,* District Judge.

OPINION

EUGENE A. WRIGHT, Circuit Judge:

Paul Oscar appeals from a conviction for aiding, abetting, and assisting two aliens "attempting to enter the United States by eluding inspection by making a false verbal claim of United States citizenship" in violation of 8 U.S.C. § 1325 and 18 U.S.C. § 2. Appellant was convicted after trial to a United States Magistrate, and the conviction was affirmed in district court. We reverse.

The facts are not in dispute. Appellant and a co-defendant, Earnest Holmes, contrived a scheme to smuggle Philip Cain and Manuel Tejeda, both British Hondurans, into the United States. Appellant and Holmes told Cain and Tejeda to hide their passports and claim to have been born in New Orleans

* Of the District of Oregon.

when questioned by customs officials. Holmes then drove the two aliens from a point in Mexico to the United States Port of Entry at San Ysidro, California. In response to questioning by the Customs Inspector, Holmes replied that he, Cain, and Tejeda were United States citizens. Due to Holmes' apparent nervousness, he was directed to drive to a secondary inspection area where further investigation revealed that Cain and Tejeda were aliens. Holmes, Cain and Tejeda were arrested immediately, and appellant was arrested later that day.

Appellant's sole contention on appeal is that this conduct does not constitute a violation of 8 U.S.C. § 1325 and 18 U.S.C. § 2. Section 2 provides that a person who aids and abets another to commit a crime against the United States is punishable as a principal. To prove guilt under this statute, the government must prove that the person aided and abetted actually committed the underlying offense. Shuttlesworth v. City of Birmingham, 373 U.S. 262, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963); United States v. Jones, 425 F.2d 1048 (9th Cir. 1970). Therefore, Cain and Tejeda must have violated Section 1325 if appellant's conviction is to be affirmed.

Section 1325 provides:

> Any alien who (1) enters the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall . . . be guilty of a misdemeanor . . .

By its terms, Section 1325 is violated only if the alien "enters" or "obtains entry to" the United States [(1), (3)] or if the alien "eludes examination or inspection by immigration officers" [(2)].

## I. WAS THERE AN "ENTRY"?

First, we consider whether Cain and Tejeda "entered" the United States. Section 1325 falls within Chapter 12 of Title 8. The term "entry" is defined in 8 U.S.C. § 1101(a)(13) for use in Chapter 12 as "any coming of an alien into the United States . . . " This definition does not clarify the issue. Nor is the legislative history helpful. The only consideration given to the meaning of "entry" as defined in § 1101(a)(13) concerned the distinction between original entries and reentries into the country. See 2 U.S.Code Cong. & Admin. News, 82nd Cong., 2nd Sess. p. 1683 (1952).

In a physical sense, Cain and Tejeda entered the United States when they physically crossed the international border upon arrival at the Port of Entry. But some courts have held that an "entry," as defined by § 1101(a)(13), has not been accomplished until physical presence is accompanied by freedom from official restraint. United States v. Vasilatos, 209 F.2d 195 (3d Cir. 1954); In re Dubbiosi, 191 F.Supp. 65 (E.D. Va.1961). Under this standard the aliens had not "entered" the United States because they were never free from the official restraint of the customs officials at the San Ysidro Port of Entry. Naturally, appellant urges us to accept this construction.

The government argues that *Vasilatos* and *Dubbiosi* are distinguishable since they dealt with the question whether certain aliens had "entered" the country and were therefore entitled to deportation hearings prior to expulsion from the country.[1] The courts held that although the aliens were physically present, they had not "entered" the United States, and thus were not entitled to hearings, because they were never free from official restraint. To be sure, this is a different context than the one which faces this court. But like this court, the *Vasilatos* and *Dubbiosi* courts were required to interpret "entry" *as*

---

1. *See* 8 U.S.C. § 1251 et seq.

*defined in § 1101(a)(13).* It is unlikely that Congress would define a term in § 1101 for use throughout Chapter 12 if it intended the term to have different meanings in different sections of the chapter. More importantly, *Vasilatos* and *Dubbiosi* at the very least show that appellant's proposed construction is *reasonable* within the context of § 1101(a)(13) and Chapter 12. This, coupled with our duty to construe criminal statutes strictly, requires us to adopt appellant's proposed construction within the context of this case. See United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). We conclude that Cain and Tejeda did not "enter" the United States as that term is used in § 1325(1), (3).

## II. WAS THERE AN "ELUDING"?

Second, we consider whether Cain and Tejeda "elude[d] examination or inspection by immigration officers." We have found no legislative history or judicial construction to aid us in discerning the meaning of this phrase. Nevertheless, it seems clear that Cain and Tejeda did not violate it. Webster's New World Dictionary (College Edition) defines "elude":

> 1. to avoid or escape from by quickness, cunning, etc. 2. to escape detection by; evade; baffle . . . .

Cain and Tejeda did not avoid, escape detection by, or evade examination or inspection. Indeed, they were examined and inspected thoroughly enough to reveal that they were aliens. Thus, while Cain and Tejeda were deceitful, they did not "exclude examination."

Since Cain and Tejeda neither "entered" the United States nor "eluded examination," they did not violate § 1325. Consequently, appellant did not aid and abet them to violate § 1325, and his conviction must be reversed. It is clear that Cain and Tejeda attempted to violate § 1325, but § 1325 does not include attempts within its purview. Nor was this apparently a congressional oversight, for at least concerning appellant's conduct, § 1324 regulates attempts.

Reversed.

KOELSCH, Circuit Judge (concurring specially):

I reach the same result as my brothers, but by a shorter route. Had the charge been conspiracy (18 U.S.C. § 371) to violate 8 U.S.C. § 1325, this conviction would have been invulnerable. But Congress has not made penal the acts which Oscar aided and abetted. 8 U.S.C. § 1325 does not in terms include attempts to enter, nor is there a general federal statute which fills this gap. (See, for example, Cal.Penal Code § 663; Oregon Rev.St. § 161.405(1); Rev.Code Wash.Anno. § 9.01.070; Idaho Code Anno. § 18–306.) Thus here there was no "underlying offense."

Accordingly, I perceive no need to pass upon the meaning of "entry" and "eluding".