UNITED STATES of America,
Plaintiff-Appellant,

v.

FORTY–SEVEN THOUSAND NINE HUNDRED EIGHTY DOLLARS ($47,-980.00) IN CANADIAN CURRENCY, Defendant-Appellee.

CA No. 81–3415.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1982.

Originally Decided Oct. 6, 1982.

Decided Feb. 22, 1984.

David B. Smith, Joel M. Gershowitz, Washington, D.C., for plaintiff-appellant.

Scott W. Reed, Coeur d'Alene, Idaho, for defendant-appellee.

Before FARRIS and CANBY, Circuit Judges, and CURTIS,* District Judge.

CANBY, Circuit Judge:

Our previous decision in this civil forfeiture action is reported at 689 F.2d 858 (9th

* The Honorable Jesse W. Curtis, United States District Judge for the Central District of Cali- fornia, sitting by designation.

Cir.1982), where the facts are fully set forth. There we affirmed a summary judgment against the government. We held that excessive delay by the government in instituting judicial forfeiture proceedings violated due process. In so holding, we relied substantially, as had the district court, on *United States v. Eight Thousand Eight Hundred Fifty Dollars,* 645 F.2d 836 (9th Cir.1981)·("*$8,850*"). Because the Supreme Court had granted certiorari in *$8,850,* we extended the time for the government to petition for rehearing of this appeal until the Supreme Court had decided *$8,850.*

On May 23, 1983, the Supreme Court entered its decision in *$8,850,* —— U.S. ——, 103 S.Ct. 2005, 76 L.Ed.2d 143. The government subsequently filed its petition for rehearing in this case and claimant filed a response to that petition. On the strength of the Supreme Court's decision in *$8,850,* we now grant the petition for rehearing, withdraw our previous decision, and reverse the summary judgment against the government. In reversing, we also reject two other grounds which were originally urged by claimant in support of the district court's judgment but which were not dealt with in our previous decision.

In *$8,850,* the Supreme Court held that *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), supplied the appropriate test for determining whether delay in initiating judicial forfeiture proceedings violated due process. 103 S.Ct. at 2012. *Barker* requires a weighing of four factors: the length of delay, the reason for the delay, the claimant's assertion of his right, and prejudice to the claimant. *Id.* Applying these factors in *$8,850,* the Supreme Court held that an 18-month delay, "quite significant" in itself, did not violate due process. *Id.* The Court found to be weighty two reasons for delay: the initiation and determination of a petition for administrative remission, and the subsequent pendency of criminal proceedings. The Court was impressed with the district court's assessment that the government had proceeded with "all due speed." *Id.* 103 S.Ct. at 2014. The Court also relied on the fact that the claimant had never requested the institution of judicial proceedings, although she had requested a speedy determination of her petition for administrative remission. Finally, the Court noted that there was no showing of prejudice to the claimant in that she had not shown that "the delay affected her ability to defend the propriety of the forfeiture on the merits." *Id.*

■ In the present case the delay in instituting judicial forfeiture proceedings was approximately 14 months. The government's reasons for the major part of this delay were the pendency of a petition for administrative remission and the pendency of a criminal investigation. Claimant did not request the institution of judicial forfeiture proceedings and, indeed, petitioned for administrative remission after being advised that such a petition constituted a request that judicial proceedings be delayed. We originally held that neither the pendency of the administrative and criminal proceedings nor the behavior of ·the claimant justified the delay in initiating the forfeiture action. We also held that no showing of prejudice to the claimant was needed to establish a due process violation based on excessive delay. 689 F.2d at 860–61.

Without question, the decision of the Supreme Court in *$8,850* totally erodes the foundations of our previous decision and requires that we withdraw it. Indeed, a reasonable argument can be made that the delay in *$8,850* was more excessive under the circumstances than the delay in this case, and that *$8,850* compels us to direct a judgment for the government on that issue. We think it inappropriate, however, to apply the *Barker v. Wingo* test in the first instance in this court. The Supreme Court in *$8,850* relied in part on the district court's determination of the government's diligence in attempting to move the administrative and criminal proceedings along. 103 S.Ct. at 2014. The Court also made it clear that the pendency of administrative or criminal proceedings did not automatically toll the time for instituting forfeiture ac-

tions, but was simply a factor to be weighed, like the other *Barker v. Wingo* factors, in assessing the reasonableness of the delay. Such weighing and assessment should initially be done by the district court. The district court in the present case engaged in no *Barker v. Wingo* analysis, of course, because our decision in *$8,850* was the law of the circuit and had not yet been reversed by the Supreme Court. We now vacate the district court's judgment and remand so that the district court can undertake the analysis required by the Supreme Court's decision in *$8,850*. The district court may then conduct any further appropriate proceedings following from its determination.

Our conclusion that the district court's ruling on excessive delay can no longer stand requires us to address for the first time two additional issues. The district court supported its summary judgment against the government on two further grounds, which the claimant initially urged on appeal in support of the judgment. Our previous disposition made it unnecessary to deal with those grounds, but we now must reach them.

 The first ground was that, because claimant's agents were denied entry into the United States at the border station, they never became subject to the requirement of 31 U.S.C. § 1101, now 31 U.S.C. § 5316, that they report currency in excess of $5,000. Section 1101(b) provided that the report had to be filed at the time and place the Secretary of the Treasury prescribed, and the applicable regulation required the report to be filed "at the time of entry into the United States." 31 C.F.R. § 103.25 (1982). Similarly, § 1101(a)(1)(B) applied the reporting requirement to one transporting money "to a place in the United States from or through a place outside the United States."

We think it is too narrow a construction of these provisions to hold, as the district court did, that they do not impose a reporting requirement on persons who present themselves at a port of entry, on United States soil, for the purposes of inspection and approval of entry into the United States. In our view, the statute and regulations clearly impose a duty to report at least by the time of inspection, and a failure to report at that time completes the violation. Any other construction would render enforcement difficult and would frustrate the congressional intent underlying the reporting requirement as well as the intent behind the statute authorizing forfeiture of monetary instruments "being transported" in violation of the reporting requirement. 31 U.S.C. § 1101(b), now 31 U.S.C. § 5317(a).

We find *United States v. Oscar*, 496 F.2d 492 (9th Cir.1974), to be distinguishable. In that case the crime was *obtaining entry* into the United States by false representations and we held that the crime was not committed when the would-be entrants were stopped by customs officers and were never freed of their official restraint or granted official entry. In the present case, however, the violation is the failure to report in itself, and the failure was complete at the port of entry. It would make the reporting requirements wholly nonsensical if the reasoning of *Oscar* were applied so as to require immigration officers to afford entry and release to persons crossing the border before a reporting requirement could even be said to arise. We therefore reject this ground of support for the district court's summary judgment.

 The final ground upon which the district court based its judgment was that the agents for the claimant were never given an opportunity at the port of entry to prepare and file the requisite form, even after they requested it. The facts presented by the government, however, indicate that the request for a report form came after the agents of the claimant had stated that they were carrying only $4,000 but had been discovered to be carrying $12,000. The government also showed that one of the claimant's agents said that he had not reported the currency in accordance with posted notices because he thought the information was required for the I.R.S. and he did not want to be bothered with an I.R.S.

form. Whatever the facts ultimately are determined to be, this showing by the government is sufficient to forestall a summary judgment based on either lack of opportunity to report or lack of knowledge of the reporting requirement. The summary judgment therefore cannot be sustained on this ground.

The summary judgment entered by the district court is vacated and the case is remanded to the district court for further proceedings in accordance with this opinion.

REHEARING GRANTED; PRIOR DECISION WITHDRAWN, JUDGMENT OF THE DISTRICT COURT VACATED; CASE REMANDED.