UNITED STATES of America, Plaintiff-Appellee,

v.

FORTY–SEVEN THOUSAND NINE HUNDRED EIGHTY DOLLARS ($47,-980) IN CANADIAN CURRENCY, Defendant,

**and**

BSP Investment and Development, Ltd., Claimant-Appellant.

No. 84–4419.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1986.*

Decided Nov. 19, 1986.

---

* This opinion was reassigned to the author on August 14, 1986.

Jeffrey Howe, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellee.

Scott W. Reed, Coeur d'Alene, Idaho, for claimant-appellant.

Before WALLACE and THOMPSON, Circuit Judges, and STEPHENS,** District Judge.

WALLACE, Circuit Judge:

BSP Investment and Development, Ltd. (BSP) appeals from a judgment of civil forfeiture in favor of the United States. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**I**

BSP is a Canadian corporation whose principal officers and shareholders are Stark and Pascoe. On February 22, 1979, Stark and Pascoe entered the United States by automobile, carrying with them $47,980 in Canadian currency, which belonged to BSP. Stark and Pascoe were routinely stopped at the United States Customs Port

** Honorable Albert Lee Stephens, Jr., United States District Judge, Central District of Califor-

of Entry at Eastport, Idaho, and questioned regarding the purpose of their visit to the United States and what property they carried with them.

Inspection of their car produced a briefcase containing a large quantity of currency, packaged in envelopes. When the customs inspector asked Stark and Pascoe if they were carrying over $5,000, they lied to him, stating that they had only $4,000. When the customs inspector told Pascoe and Stark that he wished to count their currency, Stark and Pascoe produced three envelopes, containing a total of approximately $12,000. When the customs agent drew their attention to the reporting requirement for transportation of more than $5,000, Pascoe stated that he had not wished to be bothered with the disclosure forms, which he referred to as "I.R.S." forms. In view of the circumstances, however, Pascoe had a change of heart, and stated that he and Stark wished to declare the $12,000 they had produced. With further search, the customs inspector found additional envelopes of money, and was told that it amounted to approximately $20,000. Ultimately, $47,980 in Canadian currency was found in the briefcase by customs officers.

Customs authorities seized the currency because Stark and Pascoe had failed to declare it upon entry, as required by 31 U.S.C. § 1101, *recodified as* 31 U.S.C. § 5316. One day later, on February 23, 1979, the Customs Service sent Stark a "Notice of Seizure and Information for Claimants" offering three alternatives with respect to the seized currency. Stark was informed that if he did nothing the matter would be referred to the United States Attorney within 60 days for institution of judicial forfeiture proceedings. Stark could instead expressly request that the matter be immediately referred. Alternatively, he could file a petition for administrative relief. He was informed that by

nia, sitting by designation.

filing for administrative relief he would be requesting the Customs Service *not* to refer the matter to the United States Attorney for the institution of judicial forfeiture proceedings while the administrative petition was pending. On April 20, 1979, BSP filed a petition for administrative relief. Ten days later the Customs Service advised BSP that administrative relief would not be considered until the United States attorney decided whether to file criminal charges, because the currency might be used as evidence in a criminal trial. The criminal investigation ended when the Customs Service advised BSP on August 13, 1979, that no criminal prosecution would be pursued. Nearly four months later, on December 11, 1979, the Customs Service decided to deny remission of forfeiture and, on December 17, referred the matter to the United States Attorney for prosecution of a civil forfeiture action. Four months thereafter, on April 1, 1980, the United States Attorney filed this in rem forfeiture action.

The district court granted summary judgment for BSP on the ground of delay in the institution of the forfeiture proceeding which was commenced nearly 14 months after the currency was seized. On appeal, we initially affirmed this judgment, reasoning that the 14–month delay constituted a violation of constitutional due process. *United States v. Forty-Seven Thousand Nine Hundred Eighty Dollars ($47,-980.00) in Canadian Currency*, 689 F.2d 858, 860–61 (9th Cir.1982) (*Canadian Currency I*). We granted rehearing after the Supreme Court decided *United States v. Eight Thousand Eight Hundred and Fifty Dollars in United States Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (*$8,850*), to reconsider our holding in light of that decision. *United States v. Forty-Seven Thousand Nine Hundred Eighty Dollars ($47,980.00) in Canadian Currency*, 726 F.2d 532 (9th Cir.1984) (*Canadian Currency II*). In *$8,850* the Supreme Court applied the four-factor analysis of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (*Barker*), to uphold an 18–month delay in the initiation of forfeiture proceedings. We with-

drew our opinion *Canadian Currency I* and remanded to the district court to allow it to apply the *Barker* factors in this case. *Canadian Currency II*, 726 F.2d at 533–34.

The district court, applying *Barker* and *$8,850*, found no violation of due process with respect to delay in the initiation of forfeiture proceedings. It found further that the reporting statute was violated and that the currency was subject to forfeiture. BSP appeals, arguing that the district court misapplied the *Barker* factors. In addition, BSP argues that the district court erred by concluding that the forfeiture statute does not require notice of reporting requirements for forfeiture to lie.

## II

■ We apply de novo review to determine whether a delay in the initiation of civil forfeiture proceedings is unconstitutional. *United States v. One 1954 Rolls Royce Silver Dawn*, 777 F.2d 1358, 1361 (9th Cir.1985).

■ Under *Barker*, four factors must be weighed to determine whether due process was denied. These are the length of delay, the reason for the delay, the defendant's assertion of its right to speedy determination, and prejudice. *See $8,850*, 461 U.S. at 564, 103 S.Ct. at 2012, *applying Barker*, 407 U.S. at 530, 92 S.Ct. at 2191. This test is flexible, "balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case," and none of the four factors represents "a necessary or sufficient condition for finding unreasonable delay." *$8,850*, 461 U.S. at 565, 103 S.Ct. at 2012.

### A.

■ In *$8,850*, the total delay was 18 months. Here, the delay is 14 months, a period that may be significant. *See United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162, 165 (5th Cir.1983) (13 months). However, here, as in *$8,850*, the delay was

justified by important concerns related to the administration and enforcement of law.

## B.

As pointed out in *$8,850*, the possibility of a criminal proceeding justifies delay in instituting a civil forfeiture suit. *$8,850*, 461 U.S. at 567, 103 S.Ct. at 2013. A criminal conviction may result in forfeiture, rendering civil proceedings unnecessary. *Id.* at 567–68, 103 S.Ct. at 2013–14. Moreover, a prior civil suit "might serve to estop later criminal proceedings and may provide improper opportunities for the claimant to discover the details of a contemplated or pending criminal prosecution." *Id.* at 567, 103 S.Ct. at 2013. A thorough criminal investigation may be very time consuming. We have no indication that the criminal investigation in this case, which terminated six months after the currency was seized, was unreasonably lengthy. BSP, Stark, and Pascoe can hardly complain that it terminated in a decision *not* to seek criminal indictments. If the government were forced to initiate criminal proceedings without adequate investigation it might have made a premature decision to prosecute, at considerable cost to Stark, Pascoe, and BSP.

There is a similar interest in avoiding unnecessary judicial proceedings for civil forfeiture by allowing the Secretary time to decide whether or not to grant administrative relief on a petition for remission. *Id.* at 566–67, 103 S.Ct. at 2013–14. Remission or mitigation may obviate the necessity for judicial forfeiture proceedings, and avoids the burden of dual proceedings in different forums. *Id.* at 566, 103 S.Ct. at 2013. Moreover, claimants might lose the benefit of discretionary administrative relief if the government "were forced to initiate judicial proceedings without regard to administrative proceedings." *Id.* "Such an investigation inherently is time consuming," and here, as in *$8,850*, "there is no indication that it was not pursued with diligence." *Id.* at 567–68, 103 S.Ct. at 2013–14.

In *$8,850*, the administrative investigation consumed an initial seven months, and criminal indictments were obtained within two months thereafter. *Id.* In this case, the criminal investigation took an initial six months, and ended in a determination favorable to Stark and Pascoe. *See Canadian Currency I*, 689 F.2d at 860. The Customs Service took an additional four months to determine that remission should be denied as a matter of discretion. This is similar to the situation in *$8,850* where, after a five-month criminal trial ended in a determination favorable to the claimant, three months passed before the Secretary determined that civil forfeiture should be pursued. Given these facts, we cannot conclude that the 14–month delay in this case was substantially unjustified.

## C.

The third element demands consideration of the claimant's "assertion of the right to a judicial hearing." *$8,850*, 461 U.S. at 568, 103 S.Ct. at 2014. Here, as in *$8,850*, the claimant requested administrative relief, knowing that civil proceedings before a court would thereby be delayed. The failure to request immediate judicial proceedings suggests that an early judicial hearing was not desired. *Id.* at 569, 103 S.Ct. at 2014.

## D.

Finally, there is no indication that BSP was prejudiced by the delay in this case. As with the claimant in *$8,850*, BSP "has never alleged or shown that the delay affected [its] ability to defend against the impropriety of the forfeiture on the merits." *Id.* at 569, 103 S.Ct. at 2014.

Considering the balance of factors in this case, we agree with the district court that the delay encountered here was reasonable and did not abridge the fundamental fairness guaranteed by due process of law.

## III

BSP argues that the district court misconstrued the governing statute. Stat-

utory construction is a question of law subject to de novo review. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). BSP contends that forfeiture requires a willful refusal to declare currency, undertaken with knowledge of the legal reporting requirements.

### A.

Section 1101 requires any person who "knowingly transports ... monetary instruments of more than $5,000 at one time ... to a place in the United States from or through a place outside the United States" to file a report regarding the amount and kind of instruments so transported, ownership, and other information. *See* 31 U.S.C. § 5316. The statutory language thus suggests that a person is subject to the reporting requirements if he *knows* he is transporting more than $5,000, regardless of knowledge of the reporting statute.

Congress imposed criminal penalties for violations of section 1101, providing that any person "willfully violating" its reporting provisions shall be subject to a fine and possible imprisonment. 31 U.S.C. § 1058, *recodified as* 31 U.S.C. § 5322; *see, e.g., Ivers v. United States,* 581 F.2d 1362, 1366–67 (9th Cir.1978). By imposing criminal penalties on "willful" violations alone, Congress's choice of words suggests that it recognized violations of section 1101 may be either willful or nonwillful—that is, with or without knowledge that the failure to report is illegal. The requirement of willfulness for a criminal violation thus "took this regulatory statute out of the ranks of strict liability type crimes." *United States v. Granda,* 565 F.2d 922, 926 (5th Cir.1978); *see United States v. Chen,* 605 F.2d 433, 434 (9th Cir.1979).

In the civil forfeiture provision, by contrast, Congress did not include any scienter requirement. The statute provides simply that: "A monetary instrument being transported may be seized and forfeited to the United States Government when a report

on the instrument under section 5316 of this title has not been filed or contains a material omission or misstatement." 31 U.S.C. § 5317(b). This language does not suggest that failure to file a report must be done with the knowledge that the report is required by law. Moreover, it is consistent with the general rule that under forfeiture enactments "the innocence of the owner of the property subject to forfeiture has almost uniformly been rejected as a defense." *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 683, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974). As we held before in this case, "the statute and regulations clearly impose a duty to report at least by the time of inspection, and *a failure to report at that time completes the violation.*" *Canadian Currency II,* 726 F.2d at 534 (emphasis added).

Consistent with this position, several courts have held that knowledge of reporting requirements is not required for civil forfeiture. *United States v. $831,160.45 United States Currency,* 607 F.Supp. 1407, 1414 (N.D.Cal.1985), *aff'd,* 785 F.2d 317 (9th Cir.1986); *United States v. United States Currency Amounting To the Sum Of Five Thousand, Three Hundred and Ninety-Three Dollars ($5,393.00),* 583 F.Supp. 1447, 1449 (E.D.N.Y.1984); *United States v. Four Million Two Hundred Fifty Five Thousand Six Hundred and Twenty Five Dollars and Thirty Nine Cents ($4,255,625.39),* 528 F.Supp. 969, 971–72 (S.D.Fla.1981). "The forfeiture provisions here are straightforward," *United States v. Six Thousand Seven Hundred Dollars ($6,700.00) In United States Currency,* 615 F.2d 1, 3 (1st Cir.1980), and require no showing of criminal intent. *Cf. id.* ("forfeiture is not tied to or dependent upon the wrongdoing of the owner of the monetary instruments").

The Eleventh Circuit, in *United States v. One (1) Lot Of Twenty-Four Thousand Nine Hundred Dollars ($24,900.00) in U.S. Currency,* 770 F.2d 1530 (11th Cir. 1985), however, has interpreted the "knowingly transports" language of section 1101 to mean that for purposes of civil forfei-

ture the failure to report must be committed with knowledge of the reporting requirement and an intent to break the law. We have already rejected the Eleventh Circuit's interpretation. In *United States v. One Hundred Twenty-Two Thousand Forty-Three Dollars ($122,043.00) In United States Currency,* ·792 F.2d 1470 (9th Cir. 1986), we held that the government need not prove knowledge of the reporting requirement as an element of its civil forfeiture case. *Id.* at 1473–74. That case controls our disposition of this appeal. As we stated:

> The plain language of the statutory provisions, 31 U.S.C. §§ 5316–5317, does not include knowledge of the reporting requirement as an element for forfeiture. The only knowledge requirement is that the person know that he or she is transporting more than $5,000 out of the country.

*Id.* at 1474 (footnote omitted).

### B.

█ We find no merit in BSP's contention that a violation of the reporting requirement was never completed because Stark and Pascoe were denied the opportunity to file a declaration once the legal requirement was drawn to their attention. When the customs agent informed them of the reporting requirement, Pascoe complained that he had not wished to be bothered with disclosure forms—which he referred to as "I.R.S." forms. When finally he did express a desire to file a report, Pascoe stated an intention to report $12,000—only a fraction of the sum that Stark and Pascoe had transported over the border.

These facts do not suggest that Stark and Pascoe sought to declare the currency at an appropriate time, or that they were denied the opportunity to do so.

AFFIRMED.

STEPHENS, District Judge, dissenting:

As the forfeiture statute, 31 U.S.C. Section 1101 (recodified as 31 U.S.C. Section 5316) has evolved through judicial interpretation, one bite at a time, it has lost almost all semblance of fairness, as fairness is viewed by the ordinary citizen. I invite attention to Judge Beezer's dissent and especially footnote 9 in *United States v. One Hundred Twenty-Two Thousand Forty-Three Dollars ($122,043.00) in United States Currency,* 792 F.2d 1470 (9th Cir. 1986). Judge Beezer's concern arises out of a requirement to report currency when leaving the United States while our Canadian Currency case involves entry into the United States, but both cases involve situations where the person transporting the currency may not be aware of the requirement to report the currency. The Secretary could avoid one major element of unfairness by requiring that all persons entering or leaving the United States be given a written explanation of the reporting requirements before any questions are asked concerning transportation of currency.

However, I am still concerned with this particular case as well as the effect of this decision upon future cases. In my opinion it would not be inappropriate for the Secretary to reconsider the defendant's petition for clemency and any further explanation which the petitioning party might offer.