UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 94-40096

UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

                  versus

JON D. SMITHSON and BILLY D. PYRON,

                                    Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

(March 24, 1995)

Before WISDOM, JONES, and EMILIO M. GARZA, Circuit Judges.

Edith H. Jones, Circuit Judge:

        Billy D. Pyron and Jon D. Smithson were convicted of
fraudulently concealing two real estate option contracts from the
bankruptcy court in connection with Pyron's chapter 7 liquidation
case.  Pyron and Smithson appeal portions of the jury instructions
and the calculation of their sentences.  We affirm the convictions
but vacate the sentences and restitution order because the district
court incorrectly valued the option contracts at the date of
bankruptcy in calculating the loss occasioned by appellants' crime.
U.S.S.G. § 2F1.1.

**DISCUSSION**

Billy Pyron is a real estate developer who makes his living locating tracts of undeveloped land with promising development potential. Pyron's strategy is to acquire an option to purchase the land within a specified period of time. During the option period, he attempts to add value to the land by procuring zoning changes or making other advantageous improvements, and searches for investors to buy the land. Smithson was an attorney who had previously represented Pyron in a chapter 11 bankruptcy case.

On May 7, 1991, Pyron purchased an option to buy a twenty-five acre parcel of land, (the "Pirtle property"), for $10,000 in earnest money. On June 19, 1991, Pyron purchased an option to buy another piece of property, (the "TeamBank building"), for $150 and $20,000 in earnest money.[1]

In September of 1991, Pyron again sought the counsel of Smithson to assist him in filing a chapter 7 bankruptcy petition.[2] Smithson agreed to help prepare the petition, but referred Pyron to another attorney, Ken Raney, to represent him in the bankruptcy case.[3] Smithson prepared the petition and schedules and forwarded them to Raney, who filed the documents on behalf of Pyron. Pyron

---

[1]    The earnest money for both contracts and for the extensions was advanced by an investor, Robert Ground.

[2]    Smithson was also handling Pyron's divorce at the time.

[3]    Apparently Smithson believed that his representation of Pyron in the chapter 7 case would have created a conflict of interest because Smithson was a creditor from the earlier chapter 11 proceeding.

also inquired of Smithson whether the two options could be kept out of his bankruptcy estate, ostensibly to protect Ground's investment.

On September 10, 1991, Pyron assigned the Pirtle option, for no consideration, to Tyler Broadway Crossing, Inc., and the TeamBank option to 100 Independence, Inc., two corporations created by Smithson for the purpose of receiving these options.[4] Pyron filed his chapter 7 petition on September 12, 1991. Absent from Pyron's schedules of assets and transfers was any reference to the two options that Pyron had owned just two days earlier.

On September 16 or 21, 1991,[5] the TeamBank option was set to expire. However, on October 3, 1991, Pyron negotiated a two week extension by paying an additional $5,000 in cash and $10,000 in earnest money. Pyron bought another four week extension for $5,000 in cash and $10,000 in earnest money on October 23, 1991 before the Teambank option was exercised and the deal was finally closed on November 18, 1991.

Pyron's efforts to procure a buyer for the Pirtle property were not as fruitful. On November 30, 1991, the Pirtle option expired and the $10,000 in earnest money was forfeited. On February 4, 1992, Pyron bought a second option for $2,000 to purchase approximately half of the original Pirtle property. At its expiration on April 3, Pyron bought an additional sixty day

---

[4]     The sole shareholder of the corporations was Ground, the provider of the earnest money for the option contracts.

[5]     The language of the option created some uncertainty as to which date was actually correct.

extension of his option with a $20,000 note. On June 3, 1992, the option expired and the earnest money was again forfeited. The Pirtle property was eventually sold to an unrelated investor who reimbursed Pyron $31,476.42 for commission, fees, and expenses incurred in improving the Pirtle property.

On February 26, 1992, Assistant United States Bankruptcy Trustee, Tim O'Neal met with Smithson and Pyron to discuss an anonymous tip O'Neal had received alleging that Pyron was hiding assets from the bankruptcy estate. At the meeting, Smithson and Pyron confessed that they had omitted the option contracts from Pyron's schedule of assets but maintained that the omissions were inadvertent. Although Smithson and Pyron informed O'Neal that the TeamBank option had been exercised, they did not disclose that they had both acquired an interest in the TeamBank building as compensation for their roles in closing the deal.[6] O'Neal was not convinced that the omission had been inadvertent and referred the case to the United States Attorney's Office and the Federal Bureau of Investigation.

Pyron and Smithson were charged in a seven count indictment relating to the failure to include on Pyron's bankruptcy statements and schedules the transfer of the option contracts to the two corporations. The jury found them guilty on the five counts relating to the bankruptcy fraud and concealment, but acquitted them on two counts relating to money laundering. Both

---

[6] Pyron and Smithson received 24% and 9% respectively of the shares of the 100 Independence, Inc., the corporation that owned the TeamBank building as its only asset.

4

were sentenced to 27 months in prison and ordered to pay $278,730.42 in restitution.

On appeal, both Pyron and Smithson challenge the adequacy of the jury instructions and the propriety of their sentences.

**Jury Instructions**

We afford the district courts substantial latitude in formulating the jury instructions and review a district court's refusal to give a requested jury instruction for abuse of discretion. <u>United States v. Chaney</u>, 964 F.2d 437, 444 (5th Cir. 1992). To prevail on a challenge to a jury instruction on appeal, a party must demonstrate that the requested instruction (1) was a correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense. <u>Id</u>.

Pyron's primary defense at trial was good faith reliance on advice of counsel. Pyron contended that he innocently sought the advice of Smithson who devised the scheme to create the corporations and transfer the options to those corporations. Pyron maintained that he trusted Smithson to obey the law in the transactions. Smithson's testimony that the plan was his idea corroborated Pyron's defense. Pyron contends that his ability to present this defense was improperly impaired by the district court's refusal to utilize his requested definition of the word "knowingly" in the jury instructions.

5

The court instructed the jury, "An act is done 'knowingly' when that act is done voluntarily and intentionally, not because of mistake or accident." Pyron argues that the phrase "or other innocent reason" should have been appended to the definition. This, according to Pyron, would have allowed the jury to conclude that even though Pyron knowingly concealed the options from the bankruptcy estate, he did so innocently, i.e., by relying on his counsel in good faith. As given, contends Pyron, the jury instruction precludes the jury from accepting his good faith reliance defense because the concealment was not a mistake or accident.

In defining "knowingly," the district court adopted the definition set forth in the <u>Pattern Jury Instructions</u>, <u>Criminal Cases</u>, Special Instruction 1.35 at 49 (5th Cir. 1990 Ed.), which did not include the requested phrase. Immediately preceding the definition of "knowingly" in the jury instructions were two careful and detailed instructions relating to Pyron's good faith reliance defense. In addition, Pyron's attorney advanced this defense to the jury in closing argument, and neither the government nor the judge said anything to negate the viability of this defense if believed by the jury. We are satisfied that the two paragraphs immediately preceding the definition of "knowingly" adequately apprised the jury of the good faith reliance defense and that Pyron's ability to present the defense was not improperly impaired.

Next, Pyron and Smithson both challenge the language of the jury instruction regarding what was properly considered as part

of the "estate of the debtor" for purposes of count four charging concealment of assets. The jury instruction at issue is based upon 28 U.S.C. § 152, which criminalizes concealing assets from the bankruptcy court.[7] The district court instructed the jury in accordance with section 152:

> The term 'estate of a debtor' means all rights, title, share, or interests in property owned by a debtor at the time a bankruptcy petition is filed. The term 'estate of a debtor' may also include interests in property owned by the debtor within one year before the date of the filing of the petition.

Pyron and Smithson argue that this definition is inadequate and misleading. Their requested instruction, substantially longer and very complex, is based on the proposition that "estate of a debtor" is a legal term that should have been defined in accordance with section 541 of the bankruptcy code. This court recently rejected a similar attempt to superimpose the technicalities of bankruptcy law upon the plain language of § 152. United States v. West, 22 F.3d 586, 590 (5th Cir.), cert. denied, ____ U.S. ____, 115 S. Ct. 584 (1994), West bodes ill for appellants' contention, but we need not resolve the issue definitively because, at best, it strikes at one of the five counts of conviction. The challenged jury instruction pertained to Count IV. Even if it were erroneous,

---

[7] Section 152 provides in relevant part:
"Whoever knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any case under title 11, any property belonging to the estate of a debtor;
    \*               \*              \*
Shall be fined not more than $5,000 or imprisoned not more than five years, or both."
18 U.S.C. § 152 (1994 Supp.).

appellants' convictions of the other counts of bankruptcy fraud remain intact.  Any error would be harmless.

Appellants' final allegation of error concerns whether the jury was adequately admonished, as appellants requested, that property acquired by the debtor post-petition was not part of the estate.  The court's instruction explicitly charged the jury that the estate of the debtor included property owned by a debtor at the time the petition was filed and might also include property owned by the debtor within one year *before* the petition was filed.  To instruct additionally that property acquired *after* the petition was filed was not in the debtor's estate would have been redundant.[8] The requested instruction was substantially covered in the charge.

**Sentencing Guidelines**

The more challenging facet of this appeal lies in appellants' assertion that the district court improperly enhanced their sentences eight levels under section 2F1.1 of the Sentencing Guidelines based upon an erroneous calculation of loss caused by their crimes.  We review factual findings under the guidelines for clear error.  <u>United States v. Mackay</u>, 33 F.3d 489, 496 (5th Cir. 1994).

The base offense level for fraud under the guidelines is six.  U.S.S.G. § 2F1.1.  Section 2F1.1 provides for an incremental increase in the offense level based upon the amount of loss caused

---

[8]    Appellants' contention that paragraph 65 of the charge erroneously permitted the jury to include property acquired post-petition is without merit. While this instruction refers to a post-petition time period, it is contained in count four for concealment of assets which alleges that appellants concealed property belonging to the estate of the debtor.  The post-petition time period refers to when the options were concealed, not when they were acquired.

8

by the fraud. The district court, after granting appellants a hearing, adopted the Presentence Report's (PSR) calculation of the total loss.

Application Note eight to section 2F1.1 of the guidelines permits the court to utilize the offender's gain from committing the fraud in determining the appropriate increase in offense level when the amount of loss is difficult to determine. The PSR attempted to do that. The PSR calculated the total gain to be $278,730.42 by adding the current value of Pyron's shares in 100 Independence Center Inc.,[9] plus the current value of Smithson's shares,[10] plus Smithson's legal fees earned in connection with the purchase of the TeamBank building,[11] plus the expenses recovered by Pyron in connection with the sale of the Pirtle property.[12] This calculation was clearly erroneous for several reasons.

The first error was committed in valuing the TeamBank option. There is a fundamental distinction between owning an option to buy a building and owning the building itself. Two days before Pyron filed his bankruptcy petition, he owned an option to purchase the TeamBank building for $575,000. Pyron, with the

---

[9] The PSR multiplied Pyron's 24% ownership of the outstanding shares by the current appraised value of the Teambank building ($703,800) which totaled $168,912.

[10] The PSR multiplied Smithson's 9% ownership of the outstanding shares by the current appraised value of the Teambank building ($703,800) which totalled $63,342.

[11] Smithson was paid $15,000 for the legal work he performed in executing the purchase of the TeamBank building on behalf of the corporation.

[12] Pyron was paid $31,476.42 by the ultimate purchaser of the Pirtle land. This was apparently reimbursement for expenses incurred and commission and fees received for his efforts in the unrelated sale of Pirtle land.

assistance of Smithson, transferred this option to a corporation for no consideration. What they concealed from the bankruptcy trustee was an option, not a building. The sentence enhancements must be based upon the value of the option, which is the "property" that would have been transferred to the trustee, and not on the subsequent value of the building purchased when the option was exercised.

All parties agree that the option was difficult to value on the date the petition was filed. In fact, some testimony suggested that the option had little or no value at all. The government does not dispute that had the TeamBank option been disclosed, the bankruptcy trustee would have been unable and unwilling to borrow the purchase price to exercise the option. The bankruptcy trustee is in the business of collecting and liquidating assets, not real estate management and development. The loss to the estate resulting from the concealment was, for all practical purposes, zero. However, as provided by Application Note eight to section 2F1.1 of the guidelines, the gain to the offenders by holding the option can be used as an alternative valuation method.

Although appellants' gain is also difficult to calculate, a reasonable approximation based upon the available evidence is feasible. The bankruptcy trustee signed an affidavit estimating the value of both options to the estate at approximately $5,000. Evidence was also presented that the purchase price of the TeamBank option was $150 cash plus $20,000 in earnest money. The court may additionally consider as evidence the value of the TeamBank option

10

at the date of bankruptcy was the $5,000 that was paid on October 3, 1991 to extend the option expiration period and to avert the forfeiture of the $20,000 in earnest money. It is imperative, however, that the value ascribed to the options cannot be measured after their first post-petition expiration dates. On remand, the district court must decide the value of the TeamBank option based on this standard; this, and only this, is what the appellants gained by concealing the options from the bankruptcy estate.

Second, the PSR included the $15,000 legal fee collected by Smithson in its valuation of the appellants' gain from the fraud. However, the government does not dispute that Smithson received the $15,000 for his legal work in executing the purchase of the TeamBank building on November 18, 1991 - long after the concealed option expired.[13] Therefore, compensation for legal services rendered after the petition was filed and not performed in furtherance of the fraudulent concealment[14] cannot be considered gain to the appellants for purposes of section 2F1.1 of the guidelines.

Third, the PSR attributed to the appellants the $31,476.42 that Pyron received from the subsequent sale of the Pirtle land to an unrelated purchaser. On May 7, 1991, Pyron put

_____

[13] It is of no consequence that the corporation purchased an extension on the Teambank option; the gain realized by Smithson and Pyron from concealing the option was extinguished when the initial option period expired.

[14] The government argues that the purchase of the building by the corporation was "directly tied to the concealment of the option." There is no evidence of this. The building was purchased two months after the concealed option would have expired had it been disclosed. At that point in time, there was no longer any property that belonged to the estate left to conceal.

up $10,000 in earnest money for an option to purchase the Pirtle property for $2,400,000. On September 10, 1991, Pyron, with the assistance of Smithson, transferred the Pirtle option to Tyler Broadway Crossing, Inc. for no consideration. On September 11, 1991, the day before the petition was filed, the option was extended to September 30, 1991. On November 30, 1991, the final extension expired and the earnest money was forfeited. Later Pyron paid $2,000 for a second option on approximately half of the original Pirtle land. On April 3, 1992, Pyron executed a note for $20,000 in exchange for a sixty day extension of the option. Nevertheless, the option expired and the $20,000 was forfeited. The property was ultimately purchased by an unrelated party who paid Pyron $31,476.42 for commission, fees, and expenses incurred in improving the Pirtle property and an adjacent piece of property.

As the above chronology demonstrates, the option contract that Pyron and Smithson concealed from the bankruptcy court irretrievably expired and the earnest money was forfeited. Therefore, appellants did not ultimately realize any monetary gain from the concealment.

Like the TeamBank option, the Pirtle option was essentially worthless to the bankruptcy estate because the trustee could not and would not have raised the $2,400,000 purchase price to exercise the option. To the extent that the money Pyron received from the ultimate sale of the Pirtle land was traceable to post-petition efforts and expenditures, it is not properly included in the calculation under section 2F1.1. However, the amount

12

received by Pyron in connection with the Pirtle property may have some probative value in determining what the option was worth prior to its expiration. On remand, the court must determine, as with the TeamBank option, the value prior to its expiration of the option to purchase the Pirtle property.[15]

Pyron also appeals the separate two-level enhancements he received for more than minimal planning under section 2F1.1(b)(2)(a) and as an organizer or leader of a criminal enterprise under section 3B1.1(c) of the guidelines. There is no clear error in these additions to his base offense level. Moreover, Pyron's contention that application of enhancements for both of these offense characteristics amounts to impermissible "double counting" is meritless. See United States v. Godfrey, 25 F.3d 263, 264 (5th Cir.), cert. denied, _ U.S. _, 115 S.Ct. 429 (1994).

### CONCLUSION

The convictions of Billy D. Pyron and Jon D. Smithson are **AFFIRMED**. However, we **VACATE** the sentences and the restitutionary orders of both Pyron and Smithson and **REMAND** to the district court with instructions to re-sentence the appellants consistent with this opinion. The amount of restitution ordered, if any, should be consistent with the court's valuation of loss on remand.

**AFFIRMED** in Part, **VACATED** and **REMANDED** in Part.

---

[15] It is important to note that this opinion concerns the valuation of options for purposes of calculation of loss from fraud under the sentencing guidelines. It is not intended, nor should it be interpreted, to limit in any way the rights of the bankruptcy trustee or other creditors afforded them under the Bankruptcy Code or other laws.