**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 95-40677**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**Jose TREVIÑO-MARTINEZ,**

**Defendant-Appellant.**

**Appeal from the United States District Court
for the Southern District of Texas**
_____

June 7, 1996

Before JONES, SMITH, and STEWART Circuit Judges.

EDITH H. JONES, Circuit Judge:

Jose Treviño-Martinez ("Treviño") appeals his conviction for illegally reentering the United States.  8 U.S.C. § 1326(b).  This court agrees with the majority of courts of appeals that Treviño's crime was not a specific intent offense.  Overruling appellant's challenges centered on that point, we affirm the conviction.

**BACKGROUND**

In 1988, Treviño, a Mexican citizen, was arrested in the United States and convicted of possession of marijuana with intent to distribute.[1]  After serving six months in jail for this offense,

---

[1] This offense is an "aggravated felony" under the Immigration and Nationality Act.  _See_ 8 U.S.C. § 1101(43)(B).

Treviño was deported pursuant to the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1524.  Under the terms of his deportation, before reentering the United States, Treviño was required to obtain the express consent of the Attorney General; failure to do so would subject him to fines and imprisonment.  In fact, since Treviño had committed an aggravated felony while in this country, he confronted the prospect of 20 years of imprisonment should he illegally reenter the United States.  8 U.S.C. § 1326(b)(2).

Undaunted, however, Treviño illegally returned to the United States in January of 1991.  He was immediately arrested and, after serving four months in jail, was deported to Mexico in May of 1991.        Even after this second deportation, Treviño sought to return to this country from Mexico.  In 1992, purportedly longing to visit his wife and four children in the United States, Treviño applied for a non-immigrant visa with the United States consulate in Monterrey, Mexico.  The Monterrey consulate's standard visa application procedure requires applicants to complete a form that, in part, inquires whether the applicant had been previously arrested or deported.  While there is some dispute about whether Treviño completed this standard visa application or some other, modified application that did not inquire into previous arrests or deportations, Treviño acknowledges that the consular officials were unaware of his prior arrests and deportations.  After considering his application, the American consulate issued Treviño a ten-year,

non-immigrant visa and, pursuant to its usual practice, destroyed the application form one year later.[2]

For the next few years, Treviño made frequent trips to the United States.  On one such trip in January of 1995, Treviño was jailed for ten days on convictions for DWI and for driving with a suspended license.  During his confinement, border patrol agents conducting a routine examination of the jail interviewed Treviño, who confessed that he was in this country illegally because of his prior arrests and deportations.  Treviño was subsequently indicted on the charge of illegal reentry after deportation.

After a two-day jury trial, Treviño was convicted of the offense and was later sentenced to serve 77 months imprisonment, followed by three years of supervised release.

## DISCUSSION

The sole contested issue during Treviño's trial was whether he had obtained the consent of the Attorney General of the United States to reenter this country.  The only issues on appeal concern defense-proffered jury instructions that were rejected. Treviño contends that he reasonably believed that the non-immigrant visa issued to him by the American consulate in Monterrey entitled him to reenter the United States legally; put differently, Treviño argues that he reasonably concluded that his visa somehow acted as a proxy for the consent of the Attorney General.  Based on this

---

Treviño's visa permitted him multiple reentries into the United States for up to 72 hours per entry.

contention, Treviño submitted proposed jury instructions on express consent, mistake of law, and entrapment by estoppel.

## I.  Standard of Review

Recognizing that district courts enjoy substantial latitude in formulating jury instructions, this court reviews the refusal to provide a requested instruction for abuse of discretion. *United States v. Smithson,* 49 F.3d 138, 142 (5th Cir. 1995). The district court abuses its discretion when it declines a proffered instruction only if this instruction "(1) was a correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense."  *Id.*

## II.  Express Consent

Treviño sought to have the jury instructed that it was entitled to find that the American consulate's decision to issue him a non-immigrant visa "satisfies the requirement that he obtain the express consent of the Attorney General . . . ." The district court did not err in rejecting this clearly incorrect statement of law.

An alien who has been previously arrested and deported is required to obtain the express consent of the Attorney General prior to his application for readmission to the United States. *See* 8 U.S.C. § 1326. Typically, an alien obtains such consent by securing a written authorization from the Immigration and Naturalization Service ("INS") permitting him to reenter this

**4**

country.  Importantly, however, this authorization may be issued only by the Attorney General or the INS; under the statute, the American consulate is powerless to grant such an authorization.  8 C.F.R. §§ 212.2(b)(2), 212.4(c).  Treviño could not demonstrate that either the Attorney General or the INS expressly authorized his reentry into the United States.  His proposed jury instruction was wrong.

### III. <u>Mistake of Law</u>

Treviño next tendered an instruction that required acquittal if the jury found that he mistakenly believed that he had obtained proper authorization to reenter the United States and if this "mistaken belief was reasonable and [Treviño] *did not intend to enter the United States unlawfully* . . . ." (emphasis added).  To support this proffered instruction, Treviño urges that the statute prohibiting his reentry requires the government to prove beyond a reasonable doubt that he acted with specific intent to circumvent the express consent of the Attorney General.

However, the language of the statute belies the existence of a requirement of specific intent.  In pertinent part, 8 U.S.C. § 1326 provides that any alien who

> (1) has been arrested and deported or excluded and deported, and thereafter
> (2) enters, attempts to enter, or is any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain

**5**

> such advance consent . . . . shall be fined .
> . . or imprisoned not more than 2 years, or
> both.

8 U.S.C. § 1326 (a)(1)-(2).[3]  Congress did not impose a requirement

of specific intent anywhere in the statute nor did it provide that

an alien's reasonable belief that he was legally entitled to

reenter the United States is a defense to criminal liability.

This court has previously opined as much, suggesting in

dictum that the government "is not required to show specific intent

in a § 1326 prosecution."  *United States v. Wong Kim Bo,* 472 F.2d

720, 722 (5th Cir. 1972).  Other circuits have confronted the issue

directly, and the majority agree that the statute neither requires

the government to prove specific intent nor allows an alien to

defeat conviction by demonstrating a reasonable belief of

permission to reenter this country.  *See United States v. Leon-*

*Leon,* 35 F.3d 1428, 1432-22 (9th Cir. 1994) (specific intent is not

an element of § 1326); *United States v. Champegnie,* 925 F.2d 54,

55-56 (2d Cir. 1991) (same); *United States v. Espinoza-Leon,* 873

F.2d 743, 746 (4th Cir.), *cert. denied,* 492 U.S. 924, 109 S. Ct.

3257 (1989); *United States v. Miranda-Enriquez,* 842 F.2d 1211, 1212

(10th Cir.), *cert. denied,* 488 U.S. 836, 109 S. Ct. 100 (1988);

*United States v. Hussein,* 675 F.2d 114, 116 (6th Cir.) (same),

*cert. denied,* 459 U.S. 869, 103 S. Ct. 154 (1982).  Only a divided

panel of the Seventh Circuit, over a dissent by Judge Posner, has

---

As discussed earlier, although this section imposes a maximum imprisonment of two years, Treviño was eligible for up to 20 years of imprisonment as he had been convicted while in the United States of the aggravated felony of possession of marijuana with intent to distribute. *See* 8 U.S.C. § 1326(b)(2).

ruled to the contrary. *United States v. Anton,* 683 F.2d 1011, 1017 (7th Cir. 1982) (holding that "there is some mental state requirement" for a § 1326 prosecution).

This court concludes with the majority of circuits that § 1326 does not require the government to prove specific intent nor does it provide an alien who reenters this country illegally with a defense of reasonable mistake.[4]  As a result, the proposed jury instruction is directly contrary to the express statutory language and is an incorrect statement of the law.

IV. <u>Entrapment by Estoppel</u>

Finally, Treviño contends that even if § 1326 does not require the government to prove specific intent, the district court nonetheless erroneously refused to instruct the jury on entrapment by estoppel.  Treviño asserted that the jury must acquit him if it found that he had relied on "misleading information furnished by

---

Contrary to appellant's suggestion, this court's holding that the government need not prove specific intent neither implicates nor contravenes the Supreme Court's decision in *Liparota v. United States,* 471 U.S. 419, 105 S. Ct. 2084 (1985). In sharp contrast to the instant case, the statute in *Liparota* expressly contemplated a mens rea requirement.  Specifically, the statute prohibited the fraudulent use of food stamps and provided that "whoever *knowingly* uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [the statute] or the regulations" shall be guilty of a criminal offense.  *Liparota,* 471 U.S. at 420, 105 S. Ct. at 2085 (emphasis added).  The Supreme Court observed that "Congress certainly intended by use of the word 'knowingly' to require *some* mental state with respect to *some* element of the crime defined [by the statute]." *Liparota,* 471 U.S. at 424, 105 S. Ct. at 2087 (emphasis in original).

Furthermore, the Supreme Court emphasized that its holding in *Liparota* did not support or create a mistake of law defense.  The Court explained that its

holding . . . no more creates a 'mistake of law' defense than does a statute making knowing receipt of stolen goods unlawful . . . . It is not a defense to a charge of receipt of stolen goods that one did not know that such receipt was illegal, and it is not a defense to a charge of a § 2024(b)(1) violation that one did not know that possessing food stamps in a manner unauthorized by statute or regulations was illegal.

*Liparota,* 471 U.S. at 425 n.9, 105 S. Ct. at 2088 n.9.  In the same fashion, the instant statute does not allow an alien to defeat conviction by demonstrating a reasonable belief of permission to reenter this country.

**7**

the government and mistakenly thought his conduct was sanctioned by the government," provided the jury found such reliance to be "reasonable and sincere."

This court has recently explained that a criminal defendant may be entitled to raise a defense of entrapment by estoppel only "when a government official or agent actively assures a defendant that certain conduct is legal and the defendant reasonably relies on that advice and continues or initiates the conduct." *United States v. Spires,* 79 F.3d 464, 466 (5th Cir. 1996). *See also, United States v. Meraz-Valeta,* 26 F.3d 992, 996 (10th Cir. 1994) (government must mislead the defendant and the defendant must reasonably rely on this misrepresentation) (*citing Cox v. Louisiana,* 379 U.S. 559, 568-71, 85 S. Ct. 476, 482-84 (1965); *Raley v. Ohio,* 360 U.S. 423, 437-39, 79 S. Ct. 1257, 1265-67 (1959)). Hence, the government must actively mislead the defendant by inducing him to rely on "an affirmative misrepresentation of the law by [the government official]." *United States v. Howell,* 37 F.3d 1197, 1204 (7th Cir. 1994), *cert. denied,* ___ U.S. ___, 115 S. Ct. 1810 (1995). In order for his reliance to be reasonable, the defendant must establish that "a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries." *United States v. Brebner,* 951 F.2d 1017, 1024 (9th Cir. 1991) (citations omitted).

There is no evidence in the record to support this defense for Treviño. He did not demonstrate that the American

**8**

consulate affirmatively misrepresented as legal his attempts to reenter this country; he was not actively misled by the government since the consulate did not assure Treviño that his actions were proper. *See, e.g., United States v. Clark,* 546 F.2d 1130, 1135 (5th Cir. 1977). Moreover, because Treviño was not candid about his prior arrests and deportations, the consulate could not have actively misrepresented his attempts to reenter this country as legal; without that material information, the consulate was unaware that Treviño was required to obtain the express consent of the Attorney General before reentering the United States. Treviño does not suggest nor does the record indicate that the consulate assured him that the non-immigrant visa was a proxy for the consent of the Attorney General. Further, as Treviño did not reveal his background, he could not have reasonably relied on the consulate's "misrepresentations" of his actions as legal.

## CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the conviction of Treviño for illegally reentering the United States.