24 P.3d 485 (2001)
106 Wash.App. 638
STATE of Washington, Respondent,
v.
Brian Stefan KRZESZOWSKI, Appellant.
No. 45381-5-I.
Court of Appeals of Washington, Division 1.
June 11, 2001.
*486 Timothy Ford, McDonald Hoague & Bayless, Seattle, for Appellant.
David Thiele, Snohomish County Prosecutor, Everett, for Respondent.

OPINION PUBLISHED IN PART
GROSSE, J.
The possession of firearms is subject to reasonable regulation. Prohibiting convicted felons like Krzeszowski from possessing firearms is one such reasonable regulation. Moreover, Krzeszowski was not affirmatively misled by the certificate and order of discharge restoring his civil rights. Accordingly, we affirm.

FACTS
Detective Shovlin observed an unknown male depart a garden supply store with equipment that could be used in the cultivation of marijuana. The individual drove away in a pickup truck. Detective Shovelin ran the license plates of the truck and found it was registered in the name of Brian Krzeszowski who resided in Lynnwood and whose physical description matched the individual she observed. A background check on Krzeszowski showed that he had a prior conviction for second degree burglary.
Detective Shovlin went to the Lynnwood address on several occasions. On June 9, 1998, she and Detective Behrbaum detected a strong odor of marijuana from the sidewalk in front of the house. On June 10, she returned to the house with Detective Barden and Officer Jesson with his narcotics detection dog. The officers all detected an odor of marijuana, but the dog did not. Nevertheless, the officers obtained a search warrant and discovered a marijuana grow operation. They also found a shotgun and a rifle.
Krzeszowski was convicted of manufacture of a controlled substance and unlawful possession of a firearm in the first degree. The firearm conviction was based on Krzeszowski's possession of the firearms despite the fact that he was previously convicted of a serious felony offense. This appeal followed.

DISCUSSION

Gun Violations
Krzeszowski claims his firearm conviction was error for three reasons. He argues that the prohibition violates his right to bear arms under the United States and Washington Constitutions. Secondly, he claims that because the felon firearm prohibition was made applicable to him via a statutory amendment that occurred after his civil rights had been restored, his conviction violated the prohibition on ex post facto criminal penalties. Thirdly, he argues that because his civil rights were restored when his burglary *487 sentence was completed, his firearm conviction violated due process.
Krzeszowski's claim that the prohibition of possessing firearms by felons violates the right to bear arms under the United States and Washington Constitutions fails. Under both constitutions the law is well established that the right to bear arms is not absolute and is subject to reasonable regulation.[1] One reasonable regulation is the prohibition of possessing firearms by convicted felons.[2]
As to Krzeszowski's second argument, both the Washington and United States Constitutions prohibit ex post facto laws.[3] A criminal law is ex post facto when it punishes past conduct.[4] Here the law does not violate the ex post facto clause because it applies to possession of firearms in the future.[5] The statute's reference to past felony convictions does not change the fact that only the future conduct of firearm possession is penalized. Accordingly, Krzeszowski's ex post facto argument fails.
Krzeszowski's third argument is that his firearm conviction was improper because his civil rights were restored after he completed his sentence for the burglary conviction.[6] At the time Krzeszowski completed his sentence, RCW 9.94A.220 (1992) provided: "The discharge shall have the effect of restoring all civil rights lost by operation of law upon conviction, and the certificate of discharge shall so state." Despite this language in the discharge statute, felons and persons convicted of a crime of violence were expressly prevented from possessing short firearms under RCW 9.41.040 (1992). In 1994, the Legislature expanded the scope of the prohibition to cover all firearms possessed by all serious offenders.[7] Although Krzeszowski possessed a rifle and a shotgun which fell under the later version of the statute, some version of the prohibition has applied to him since the court first restored his civil rights.
Krzeszowski claims the certificate and order of discharge form did not notify him that his right to bear arms was restricted. *488 However, knowledge that possession of a firearm is unlawful is not an element of the crime of unlawful possession of a firearm under the Washington statute.[8] Thus, the State did not have to prove that Krzeszowski knew it was illegal to possess firearms.[9] Ignorance of the law is no defense to a criminal prosecution.[10] Notice issues typically center around whether a law explains with sufficient clarity the conduct it purports to criminalize.[11]
To support his claims, Krzeszowski cites to a number of federal cases, all of which are distinguishable. In the case of Lambert v. California,[12] the court considered a Los Angeles municipal criminal ordinance that required felons to register with municipal authorities if they were in the city more than five days. The court in Lambert held that the statute was unconstitutional because defendants did not receive adequate notice of the duty to register under the statute.[13]
Subsequent courts have repeatedly construed Lambert as limited to its narrow facts and have declined to extend its reach.[14] Assuming without holding that Lambert does establish a rule that some activities are so innocent that it violates due process to prosecute them without express notice, the possession of firearms by a convicted felon is not sufficiently innocent. Felons are routinely restricted from various activities even after their civil rights have been restored.[15] Moreover, the possession of firearms is frequently subject to regulation. No felon can reasonably assume that the possession of firearms is so innocent as to require notice before the crime can be prosecuted.
Krzeszowski also cites United States v. Emerson.[16] In Emerson the court held that Emerson's due process right to notice was violated when he was convicted under a federal statute for possessing a firearm while under a restraining order.[17] However, two federal courts of appeal have expressly rejected Emerson because the court in Emerson mistakenly portrays a dissenting view from another case as if it were a majority position.[18] We also decline to rely on it.
Krzeszowski next argues United States v. Herron.[19] The court in Herron considered a federal statute that prohibited individuals convicted of a crime punishable by imprisonment *489 for a term exceeding one year from possessing any firearm. But the statute excludes convictions for which civil rights have been restored unless the restoration expressly restricts the right to possess firearms. The court in Herron held that a defendant who had a prior Washington felony conviction could not be convicted under the federal firearm statute because the defendant's civil rights had been restored.
In Herron, the court stated:
"If the state sends the felon a piece of paper implying that he is no longer `convicted' and that all civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon point blank that weapons are not kosher."[20]
Herron is inapplicable here because it interpreted Herron's rights under a federal firearm statute which expressly provides that it does not apply to defendants who have had their civil rights restored. The case pertains to an express "anti-mousetrapping" provision in a federal statute which exists to prevent felons from being convicted for firearm possession under the federal statute despite being told by the state in which they were convicted that they could bear arms. Indeed, the court in Herron went on to state that although Herron could not be convicted under federal law, he might have violated Washington's firearm law.[21]
The United States Supreme Court's reasoning in Caron v. United States is instructive.[22] In Caron, the court interpreted the same federal statute considered in Herron. The court in Caron held that while Massachusetts law restored Caron's civil rights after conviction, it prohibited him from possessing pistols outside his business or home. The court went on to hold that the Massachusetts prohibition on pistols was a sufficient prohibition on the possession of firearms to invoke the federal prohibition on the possession of firearms. As a result the court upheld Caron's federal conviction despite the fact that Caron possessed only shotguns and rifles which were not prohibited to him under the Massachusetts law.[23]
Krzeszowski's final due process argument is that when the court restored his civil rights, this caused him to believe that his right to possess firearms was also restored. Thus, Krzeszowski asserts the defense of entrapment by estoppel.[24] Such a defense may only be raised where a government official or agent has actively assured the defendant that certain conduct is reasonable, and the defendant reasonably relies on that advice and continues or initiates the conduct.[25] "[T]he government must actively mislead the defendant by inducing him to rely on `an affirmative misrepresentation of the law by [the government official].'"[26] "In order for his reliance to be reasonable, the defendant must establish that `a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'"[27]
In those cases where courts have applied entrapment by estoppel, the defendant relied upon an express, active representation by a government agent that the proscribed activity was in fact legal.[28] Where the government agent has not expressly represented *490 the activity as legal, the defense does not apply.[29]
Here the court that restored Krzeszowski's civil rights did not actively or affirmatively represent to him that he could possess firearms. Absent the express representation that the restoration includes the right to possess firearms, there can be no entrapment by estoppel.
We affirm.
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
ELLINGTON, J., and BECKER, J., concur.
NOTES
[1] See Lewis v. United States, 445 U.S. 55, 65 n. 8, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980); Gillespie v. City of Indianapolis, 185 F.3d 693, 710 (7th Cir.1999); State v. Spencer, 75 Wash.App. 118, 122, 876 P.2d 939 (1994); State v. Taylor, 74 Wash.App. 111, 124, 872 P.2d 53 (1994).

Krzeszowski's citation to State v. Rupe, 101 Wash.2d 664, 683 P.2d 571 (1984), is misplaced. Rupe's death sentence was reversed because the trial court admitted evidence of his weapons collection as an aggravating factor meriting death. None of the weapons were used in Rupe's crime. The court held Rupe could not be penalized for constitutionally protected behavior. The court in Rupe did state that the right to bear arms under the Washington Constitution is facially broader than under the federal constitution, but the court also expressly stated that it was not deciding the scope of that right because Rupe's possession of weapons fell well within the right. Rupe had no prior criminal convictions that rendered his possession illegal, nor was his possession of the weapons illegal in any other way. Rupe, 101 Wash.2d at 706-07, 683 P.2d 571.
[2] Caron v. United States, 524 U.S. 308, 316-17, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998).
[3] Const. art. I, § 23; U.S. Const. art. I, §§ 9, 10.
[4] Forster v. Pierce County, 99 Wash.App. 168, 178, 991 P.2d 687 (2000) (citing Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)).
[5] Forster, 99 Wash.App. at 181, 991 P.2d 687; see also State v. Olvera, 191 Ariz. 75, 952 P.2d 313 (1997).
[6] The 1992 certificate and order of discharge issued by the court reads as follows:

This matter having come on regularly before the above-entitled Court pursuant to R.C.W. 9.94A.220, the Court having been notified by the Secretary of the Department of Corrections or his designee that the above-named defendant has completed the requirements of his/her sentence, and there appearing to be no reasons why the defendant should not be discharged, and the Court having reviewed the records and file herein, and being fully advised in the premises, Now, Therefore,
IT IS HEREBY CERTIFIED that the defendant has completed the requirements of the sentence imposed.
IT IS HEREBY ORDERED that the defendant be DISCHARGED from the confinement and supervision of the Secretary of the Department of Corrections.
IT IS FURTHER ORDERED that the defendant's civil rights lost by operation of the law upon conviction be HEREBY RESTORED.
[7] Laws of 1994, 1st Ex.Sess., ch. 7, § 402.
[8] State v. May, 100 Wash.App. 478, 482, 997 P.2d 956 (2000); State v. Semakula, 88 Wash.App. 719, 724, 946 P.2d 795 (1997). Cf. State v. Anderson, 141 Wash.2d 357, 5 P.3d 1247 (2000) (holding unlawful possession of a firearm is not a strict liability offense and the State must demonstrate the defendant was aware of the presence of the weapon, but not holding the defendant must know possession is a crime).
[9] May, 100 Wash.App. at 482, 997 P.2d 956.
[10] State v. Reed, 84 Wash.App. 379, 384, 928 P.2d 469 (1997); United States v. Reddick, 203 F.3d 767, 770 (10th Cir.2000).
[11] United States v. Meade, 175 F.3d 215, 225 (1st Cir.1999).
[12] Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).
[13] Lambert, 355 U.S. at 229-30, 78 S.Ct. 240.
[14] Reddick, 203 F.3d at 770 (citing Meade, 175 F.3d 215; United States v. Bostic, 168 F.3d 718 (4th Cir.), cert. denied, 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999); United States v. Baker, 197 F.3d 211 (6th Cir.1999), cert. denied, 528 U.S. 1197, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000); United States v. Wilson, 159 F.3d 280 (7th Cir.1998)).
[15] Among many other prohibitions, the State may deprive convicted felons the ability to manage or have a significant ownership interest in gambling operations (RCW 9.46.158(1)); engage in various pharmacy-related activities (RCW 18.64.165(2)); work in collection agencies (RCW 19.16.120(4)(c)); own or operate an employment agency (RCW 19.31.100(2)); be a mortgage broker (RCW 19.146.210(1)(d)); be a chief of police or marshal (RCW 35.21.333(1)(c)); or serve as personal representative in probate (RCW 11.36.021(2)(a)).
[16] United States v. Emerson, 46 F.Supp.2d 598, 612-13 (N.D.Tex.1999).
[17] Emerson, 46 F.Supp.2d at 611-13.
[18] United States v. Kafka, 222 F.3d 1129, 1131 (9th Cir.2000), cert. denied, ___ U.S. ___, 121 S.Ct. 1365, 149 L.Ed.2d 293 (2001); United States v. Napier, 233 F.3d 394, 397 (6th Cir. 2000). Both cases refer to the fact that the authority relied upon by the court in Emerson is Judge Posner's dissent in United States v. Wilson, 159 F.3d 280, 293 (7th Cir.1998).
[19] United States v. Herron, 45 F.3d 340 (9th Cir.1995).
[20] Herron, 45 F.3d at 343 (quoting United States v. Erwin, 902 F.2d 510, 512-13 (7th Cir.1990)).
[21] Herron, 45 F.3d at 343.
[22] Caron, 524 U.S. 308, 118 S.Ct. 2007, 141 L.Ed.2d 303.
[23] Caron, 524 U.S. at 316-17.
[24] United States v. Trevino-Martinez, 86 F.3d 65, 69 (5th Cir.1996).
[25] Trevino-Martinez, 86 F.3d at 69 (citing United States v. Spires, 79 F.3d 464, 466 (5th Cir.1996)).
[26] Trevino-Martinez, 86 F.3d at 69 (quoting United States v. Howell, 37 F.3d 1197, 1204 (7th Cir.1994)).
[27] Trevino-Martinez, 86 F.3d at 69 (quoting United States v. Brebner, 951 F.2d 1017, 1024 (9th Cir.1991) (citations omitted)).
[28] See Brebner, 951 F.2d at 1026; see also United States v. Clegg, 846 F.2d 1221 (9th Cir.1988); United States v. Tallmadge, 829 F.2d 767, 773 (9th Cir.1987).
[29] See Trevino-Martinez, 86 F.3d 65. The court in Trevino-Martinez held that the defense of entrapment by estoppel did not apply to a defendant who had prior criminal convictions in the United States and was previously deported from the United States, applied for and received a non-immigrant visa from consular officials, and was later charged with illegal reentery into the United States after deportation. The court also noted that Trevino Martinez acknowledged that consular officials were unaware of his prior arrests and deportations. See also Spires, 79 F.3d 464, where a state crime task force officer instructed a cooperating felon he could not be armed and should put his gun in his vehicle and take it home. The court held the state officer's statement did not render entrapment by estoppel defense applicable to a federal charge for being a felon in possession of a firearm because the state officer was not an officer of the federal government.