UNITED STATES of America,
Plaintiff–Appellee,

v.

Refugio Alberto CARDENAS–ALVAREZ,
Defendant–Appellant.

No. 92–8311.

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 26, 1993.

---

Bertha A. Zuniga, El Paso, TX (court-appointed), for defendant-appellant.

Richard L. Durbin, Jr., Joseph H. Gay, Jr., Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, TX, for plaintiff-appellee.

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

## BACKGROUND

Refugio Alberto Cardenas–Alvarez (Cardenas) was charged with attempting to illegally re-enter the United States after having been deported as a result of a conviction for unlawful distribution, manufacture, dispensation, sales, and possession of cocaine. The Government attached a notice of enhanced penalty to the indictment which informed Cardenas that upon conviction, a harsher sentence would be requested pursuant to 8 U.S.C. § 1326(b). A jury found Cardenas guilty of the offense charged. Over Cardenas's objections to the Presentence Report (PSR)'s calculation of a total offense level of 24 and a criminal history category of VI, the court sentenced the defendant to a term of imprisonment of 100 months and ordered him not to re-enter the United States without legal documentation during a subsequent three-year supervised release period.

## OPINION

Cardenas challenges the sufficiency of the evidence, asserting that the Government failed to prove beyond a reasonable doubt that he attempted to re-enter the United States. His factual challenge is that he was not attempting to re-enter the United States, but was merely trying to obtain information on how he could reclaim his lost United States residence. He also argues that he could not legally attempt re-entry because he was never free of official restraint at the border area.

In reviewing a sufficiency of the evidence challenge, this Court must examine the evidence in the light most favorable to the verdict and uphold the conviction if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *United States v. Gallo,* 927 F.2d 815, 820 (5th Cir.1991). All reasonable inferences and credibility choices are reviewed in favor of the verdict. The evidence is sufficient if a rational trier of fact could have found that the Government established guilt beyond a reasonable doubt. *United States v. Vasquez,* 953 F.2d 176, 181 (5th Cir.1992). Cardenas properly preserved this issue by moving for a judgment of acquittal at the close of the Government's case, and again at the close of all of the evidence. *See United States v. Pierre,* 958 F.2d 1304, 1310–11 (5th Cir.) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992).

Cardenas was charged with violating 8 U.S.C. § 1326, attempted re-entry into the United States by a deported alien. In order to obtain a conviction for this offense, the Government must prove that:

1) the defendant was an alien at the time of the alleged offense;

2) the defendant had previously been arrested and deported;

3) the defendant attempted to enter the United States; and

4) the defendant had not received the express consent of the Attorney General of the United States to apply for readmission to the United States since the time of his previous arrest and deportation.

*See United States v. Terrazas–Carrasco,* 861 F.2d 93, 96 (5th Cir.1988); *United States v. Campos–Asencio,* 822 F.2d 506, 508 n. 1 (5th Cir.1987).

■ The trial transcript indicates that there was no dispute as to elements one, two, and four. Cardenas, who took the stand in his own defense, testified that he is from Chihuahua, Mexico, and is not a U.S. citizen. Also, the Government presented the jury with exhibits that indicated that Cardenas had been found to be an alien. During cross-examination, Cardenas admitted that while in the United States, he had been convicted of criminal offenses including burglary in 1981, illegal re-entry in 1985, criminal tampering in 1988, and a cocaine offense in 1990 which resulted in his deportation. Other proffered documents confirmed that Cardenas had been deported. The last element, that the defendant had not received the express consent of the Attorney General of the United States to apply for readmission to the United States since the time of his previous arrest and deportation, was also established at trial and is uncontested on appeal.

Cardenas admitted that he came to the Paso del Norte bridge at El Paso on January 5, 1992. He testified that he previously went to the bridge in December 1991, and was told that he needed to present identification in order to obtain information on reacquiring his immigration papers. He further testified that he returned to the bridge in January with his Mexican driver's license. He contends that he indicated to Officer Cole in Spanish that he wanted information on how he could replace his immigration papers. Lastly, Cardenas stated that because he had successfully entered previously into the United States by "wading the river," he could have done so again if his intent was to illegally re-enter.

However, the officers' testimonies contradicted these contentions. United States Customs Inspector Chris Miller testified that Cardenas approached his pedestrian lane at 5:15 a.m., declared that he was a U.S. citizen and that he was returning to Denver, Colorado, where he had been born. Miller stated that Cardenas initially spoke in English and later began answering in Spanish. Miller testified that upon inquiry, Cardenas indicated that he had no identification but he produced a wallet containing a Mexican driver's license. Miller then referred Cardenas to INS Inspector Curtis Cole for citizenship verification.

Cole testified that Cardenas showed him a Mexican driver's license and indicated to him in Spanish that he was a legal resident alien, born in Chihuahua, and that he had lost his immigration documents while on vacation in Chihuahua. After checking the information provided by Cardenas, Cole indicated that the computer provided no information that Cardenas was a legal resident alien. Cole testified that he turned the verification process over to his supervisor, Inspector Treviso, who found that Cardenas had an immigration record and had been twice deported. Supervisor Immigration Inspector Raquel Treviso testified that the computer search verified that Cardenas was an alien and that Cardenas eventually admitted that he had been deported.

Because all reasonable inferences and credibility choices are reviewed in favor of the verdict, the jury's belief of the inspectors' versions of what happened over Cardenas's version appears reasonable. Cardenas's contention that he was merely inquiring into how he could regain his citizenship and that he was not attempting to enter the United States did not create a reasonable doubt as to his intent. *Vasquez,* 953 F.2d at 181.

■ Cardenas further asserts that the evidence was insufficient because "entry" requires freedom from official restraint and, therefore, any attempt to enter must also. He argues that he could not have

attempted to re-enter because he was officially restrained by the INS officers. We have not found any published cases on the crime of attempted entry.

Construing another provision of Title 8, namely, § 1324(a)(4), this Court has noted the statutory definition of "entry" as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession." *United States v. Hanna*, 639 F.2d 194, 195 (5th Cir. Unit B Mar. 1981) (quoting 8 U.S.C. § 1324(a)(4)).

Most courts who have decided what conduct comprises an "entry" have concluded that physical presence in the country is required, as well as freedom from official restraint. *See United States v. Kavazanjian*, 623 F.2d 730, 736 (1st Cir.1980); *Correa v. Thornburgh*, 901 F.2d 1166, 1172 (2d Cir.1990); *United States v. Vasilatos*, 209 F.2d 195, 197 (3d Cir.1954); *Vitale v. INS*, 463 F.2d 579, 581–82 (7th Cir.1972); *United States v. Aguilar*, 883 F.2d 662, 682 (9th Cir.1989). The Fifth Circuit has not addressed the issue.

Although most of the cases deal with the civil aspects of immigration law, i.e., whether an alien is subject to exclusion or deportation, two circuits have held that the civil definition of "entry" also applies in criminal proceedings. *Kavazanjian*, 623 F.2d at 737 n. 13; *Aguilar*, 883 F.2d at 682. The criminal cases addressing the issue of "entry" all deal with assisting others to enter illegally, rather than illegal entry itself. *United States v. Oscar*, 496 F.2d 492 (9th Cir.1974); *Kavazanjian*, 623 F.2d 730. *United States v. Hanna*, the only Fifth Circuit case found which comes close to discussing the issue of what constitutes illegal entry into the United States by an illegal alien, also involved assisting aliens to enter.

■ The precise question for our determination is whether an alien who approaches a port of entry and who makes a false claim of citizenship or non-resident alien status has attempted to enter the United States. The indictment charged Cardenas with attempted re-entry into the United States, not with actual entry, as is clearly contemplated by the statute. To graft "freedom from official restraint" onto the crime of attempted entry would make that crime synonymous with actual entry. The evidence credited by the jury showed that Cardenas attempted to enter by attempting to convince the border inspectors that he was entitled to pass.

Cardenas challenges the imposition of an enhanced 100–month sentence as clearly erroneous because no proof "beyond a reasonable doubt" was introduced during the trial, no certified copy of a conviction was ever introduced, and there was no proof that his prior deportation was caused by an aggravated felony conviction.

■ An appellate court should uphold a sentence unless the sentence was "imposed in violation of the law" or was "imposed as a result of an incorrect application of the sentencing guidelines," or was "outside the range of the applicable sentencing guideline and is unreasonable." *United States v. Gallegos*, 868 F.2d 711, 712–13 (5th Cir. 1989). The findings of fact made by the district court must be upheld by the reviewing court unless they are clearly erroneous. *Id.* at 713.

■ In making a sentencing determination, the district court may consider any relevant evidence "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *United States v. Alfaro*, 919 F.2d 962, 964 (5th Cir.1990). The court had before it, not only Cardenas's admissions at trial that he had felony convictions, but also the criminal history information contained in the PSR. Cardenas did not raise the issue of the PSR's reliability in the district court. In fact, his objections recognized some enhancement for prior felony conviction. Therefore, the sentence was not clearly erroneous.

Cardenas argues that the 100–month guideline sentence is excessive, greatly disproportionate to the offense charged, and in violation of the Eighth Amendment, Fifth (he states "Fourth"), and Fourteenth Amendments. He contends, as he did at

sentencing, that the U.S.S.G. § 2L1.2 enhancement provision raises the base offense 16 levels from 8 to 24, making the sentence disproportionate. However, his Fifth and Fourteenth Amendment arguments are raised for the first time on appeal.

During the sentencing hearing, the district court agreed with Cardenas and opined that the guideline sentence for this offense is "ridiculous," stating:

> And his offense, which he stands convicted and for which he supposedly is being sentenced is just a plain vanilla illegal reentry, or in fact, in his case, an attempt to re-enter. It wasn't even executed. It wasn't even completed. So the guideline sentence is really far fetched.

He also noted that the sentence was "unduly severe and not appropriate to the actual offense conduct." We are inclined to share the district court's feelings in this regard; but we are not at liberty to adjust the sentence on appeal.

 The Supreme Court has upheld the constitutionality of the guidelines. *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The more specific constitutional challenges to Cardenas's sentence were exceptionally briefed by the Government. Relying on *United States v. Sullivan*, 895 F.2d 1030 (5th Cir.), *cert. denied*, 498 U.S. 877, 111 S.Ct. 207, 112 L.Ed.2d 168 (1990) (citations and quotations omitted), the Government correctly notes that appellate review for Eighth Amendment challenges is narrow. *Id.* at 1031. The appellate court is not to substitute its judgment for that of the legislature nor of the sentencing court as to the appropriateness of a particular sentence; it should decide only if the sentence is within constitutional limitations; and it should engage rarely in analyzing whether the sentence is constitutionally disproportionate in light of deference to the sentencing court's determination. *Id.* at 1032. Because Cardenas's 100–month term of incarceration is within the applicable guideline range, 100–125 months, and the Fifth Circuit has concluded that the Guidelines are a "convincing objective indicator of propor-

tionality," *id.*, the Eighth Amendment challenge is without merit.

 Because Cardenas's Fifth and Fourteenth Amendment arguments were not raised in the lower court, the standard of review is plain error. *United States v. Lopez*, 923 F.2d 47, 49 (5th Cir.1991). In challenging his sentence, Cardenas raises essentially an equal protection argument. However, the guidelines were devised to and. do treat all persons with aggravated felonies who commit this crime equally. Accordingly, the Fifth and Fourteenth Amendment arguments in this instance are rejected.

We AFFIRM the judgment of the district court.