**UNITED STATES of America,**
**Plaintiff,**

v.

**Antonio MORALES–TOVAR,**
**Defendant.**

**No. DR 98–CR–505 WWJ.**

United States District Court,
W.D. Texas,
Del Rio Division.

Feb. 8, 1999.

Robert Arambide, Assist. U.S. Attorney, for U.S.

William Dietz Fry, Federal Public Defender's Office, Del Rio, TX, for Antonio Morales–Tovar.

## MEMORANDUM OPINION

JUSTICE, Senior District Judge.

On October 21, 1998, defendant Antonio Morales–Tovar was indicted with one count of attempting to enter the United States after having been deported from the United States, in violation of 8 U.S.C. § 1326(a) and (b)(1)/(2). If convicted, the defendant faces a maximum of 20 years imprisonment and a $250,000 fine. Pursuant to Fed.R.Crim.P. 23(a), and with the approval of the court and consent of the government, the defendant waived a jury trial. A bench trial was held before this court on January 19, 1999.

In several, important ways, this is a case of first impression. This court has found no record of other defendants who walked up to a United States port of entry, presented truthful identification, and were arrested for attempted illegal re-entry. For two independent and alternative reasons-first, that the government failed to show beyond a reasonable doubt that defendant "attempted" to re-enter, and second, that the government failed to show defendant's specific intent to attempt to illegally re-enter the United States-it is determined that defendant Antonio Morales–Tovar should be acquitted of all charges.

## I. Factual Background

The following evidence was credibly adduced at trial. Defendant Antonio Morales–Tovar is a 68 year-old Mexican national. Born in San Lorenzo, Coahuila, Mexico, the defendant became a permanent resident of the United States on December 18, 1958, at the age of 27 years. Over the years, the defendant had eight children in the United States. In 1994, after living in the United States for 38 years, the defendant committed an aggravated felony drug offense. On April 16, 1996, after serving his sentence, the defendant was ordered deported to Mexico by a United States Immigration Judge. The defendant is a Spanish-speaker. Upon deportation, the defendant was served with form I–294, which stated, in Spanish, that the defendant must obtain permission from the Attorney General to apply for admission to the United States within twenty years of committing an aggravated felony.

On September 30, 1998, allegedly in deteriorating health and missing his family,

the defendant went to the port of entry at Del Rio, Texas. The defendant was accompanied by an employer, who drove him to the bridge on the Mexican side. The two walked to the port of entry in Del Rio. The defendant then engaged in a conversation with the immigration authorities, the exact nature of which is not on record. Defendant's companion understood that the defendant needed to return to the port of entry with identification.

The defendant returned to the Del Rio port of entry the following morning, on October 1, 1998. The defendant brought his Mexican birth certificate and his Mexican labor union card, which was a photo ID. The defendant approached an immigration inspector at "secondary inspection." The defendant spoke to the immigration inspector in Spanish, but there is no record of the exact wording of the defendant's query. According to the immigration inspector, who speaks a "workable amount" of Spanish, the defendant wanted to replace his resident alien card. The defendant was not asked at that time if he had been previously deported.

The defendant was asked for identification, which he provided. When a computer check revealed that defendant had been previously deported, he was then patted-down and read his *Miranda* rights. When asked, the defendant readily admitted that he had previously been deported. The defendant never gave a false name, nor did he ever present false documents. There is no evidence in the record to indicate that the defendant ever lied about his immigration status. There is also no evidence that the defendant ever attempted to elude inspection of immigration officials.

The defendant gave a sworn statement to the immigration authorities that is recorded in an Immigration and Naturalization Service (INS) form I–867B entitled "Record of Sworn Statement in Proceedings." The officer taking the statement simultaneously transcribed the defendant's answers from Spanish into English and then typed them in the INS form. The

first section of the form, read by the officer to the defendant, states:

> I am an officer of the United States Immigration and Naturalization Service. I am authorized to administer the immigration laws and to take sworn statements. I want to take your sworn statement *regarding your application for admission to the United States.*

*Government Exhibit 2 (emphasis added.)* Other than in this section of the form, the record does not reflect that the defendant actually applied for admission to the United States on October 1, 1998. Another paragraph of the INS form I–867B, also read by the officer to the defendant, states that "[t]his may be your only opportunity to present information to me and the Immigration and Naturalization Service to make a decision." *Id.*

The defendant, who apparently does not speak English, signed the INS sworn statement form containing his answers in English. According to the signed sworn statement, the defendant stated that he came to the port of entry to re-apply for a resident alien card. The defendant stated that he wanted to go to Del Rio to be with his sons and that he would work at a restaurant in Del Rio. The defendant further stated that his resident alien card had been lost or stolen in Mexico. No evidence supporting or refuting this claim was presented at trial.

## II. The Law

The defendant was charged with violating 8 U.S.C. § 1326, which makes it a crime for him to enter, attempt to enter, or be found in the United States after he was deported for the commission of an aggravated felony. Those same provisions provide that such an person may re-enter if, "prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission . . . ." 8 U.S.C. § 1326(a)(2)(A). The statute gives no direction regarding

how to obtain such permission from the Attorney General.

Nearly all cases brought under this statute have concerned defendants who were caught in the United States, cases in which the defendant had, necessarily, illegally re-entered the country. There are two attempt-based § 1326 cases that have come before the Fifth Circuit. In one, the defendant arrived at New Orleans International Airport from Cost Rica and presented a falsified passport to immigration authorities. *U.S. v. Saenz–Forero,* 27 F.3d 1016 (5th Cir.1994). A second case involved a person previously deported who falsely declared to Immigration Inspectors that he was a U.S. citizen returning to his birth-place of Denver, Colorado. *U.S. v. Cardenas–Alvarez,* 987 F.2d 1129 (5th Cir. 1993). Regarding such an attempt-based charge, the Fifth Circuit read 8 U.S.C. § 1326 to require that the government prove four elements beyond a reasonable doubt:

1) the defendant was an alien at the time of the alleged offense;

2) the defendant had previously been arrested and deported;

3) the defendant attempted to enter the United States; and

4) the defendant had not received the express consent of the Attorney General of the United States to apply for readmission to the United States since the time of his previous arrest and deportation.

*U.S. v. Cardenas–Alvarez,* 987 F.2d 1129, 1131–1132 (5th Cir.1993).

### III. Analysis

**A. The government has not proven beyond a reasonable doubt that defendant attempted to re-enter.**

 In the instant action, the only contested aspect of the offense is the third element, i.e., that the defendant attempted to enter the United States. The government argues that the defendant stated, at the Del Rio port of entry, that he wanted to replace his resident alien card, and that this amounted to an attempt to enter the United States under the statute. Counsel for the defendant disputes this, arguing that the defendant, his health worsening and missing his family, was abiding by the law by going to the port of entry to find out what he had to do to re-enter the United States. There is no evidence that the defendant ever actually applied for admission to the United States.

At best, the court is faced with alternative, plausible explanations for defendant's actions. It is undisputed that the defendant has not received the express consent of the Attorney General of the United States to apply for readmission to the United States. However, pursuant to 8 C.F.R. § 2.1, the port of entry is delegated the authority of the Attorney General to process such a waiver. Furthermore, according to 8 C.F.R. § 212.2, a person who has been deported or removed from the United States can, at a port of entry, apply for permission to reapply for admission.[1]

Forms for waivers from the Attorney General are available at the port of entry where the defendant was arrested. If someone were to know to ask for such a form, the immigration service would give them one. The senior inspector in charge of the defendant's case was aware of that there are different kinds of waivers that allow someone who has been deported to return to the U.S., although he did not know specifically what those waivers are. However, the senior inspector was aware that forms for such waivers are available at the port of entry. The defendant was

---

1. 8 C.F.R. § 212.2(f). Entitled "Applicant for admission at port of entry," this section reads as follows:

Within five years of the deportation or removal, or twenty years in the case of an alien convicted of an aggravated felony, an alien may request permission at a port of entry to reapply for admission to the United States. The alien shall file the Form I212 with the district director having jurisdiction over the port of entry. *Id.*

never offered, nor given, such a form for a waiver from the Attorney General. It is a plausible (and even likely possibility) that if the defendant had been given such a form, he would have simply left the port of entry and returned to Mexico.

It is determined that there is not credible evidence to prove beyond a reasonable doubt that the defendant was voluntarily attempting to re-enter the United States on October 1, 1998.[2] His sworn statement does make clear that defendant desired to re-enter the country to be with his sons. The statement also reveals the defendant's ready willingness to admit to, and explain the reasons for, his prior deportation. After reviewing all of the evidence before the court, it is determined that an equally plausible explanation for defendant's actions is that he was seeking permission to re-enter the country-a legally sanctioned, and in his case a legally-required, action. Simply put, the difference between being arrested and not being arrested cannot be the difference between the two statements "I want *to replace* my resident alien card" and "I want *to apply for a waiver* from the Attorney General so that I can replace my resident alien card."

The Fifth Circuit has held that an person who approaches a port of entry and who makes a false claim of citizenship or nonresident alien status "attempts to enter" the United States within meaning of statute. *U.S. v. Cardenas–Alvarez*, 987 F.2d 1129, 1132–33 (5th Cir.1993). Such is not the case here.[3] The defendant answered truthfully at every step, providing identification and documentation to the immigration inspectors. The government's allegations that defendant was deceptive when he said his resident alien card had been lost or stolen are nowhere supported by evidence in the record. Given the possibility, based on all the evidence before this court, that the defendant was attempting to discover what he needed to do to enter the United States legally, his guilt has not been proven beyond a reasonable doubt. The defendant, therefore, must be acquitted.

**B. The government has not proven beyond a reasonable doubt that defendant had specific intent to commit a crime.**

█ The defendant also argues that the crime of attempting to re-enter requires specific intent,[4] and that the government failed to show specific intent. That is, the defendant claims that like most attempt-based crimes, he must have specifically intended to violate the law to be convicted. It is determined that this argument provides a separate and alternative basis for defendant's acquittal.

**1. Specific intent must be an element of conviction for attempt to re-enter under 8 U.S.C. § 1326.**

█ There is no Fifth Circuit case law directly stating whether or not the crime of attempting to re-enter requires a mens

---

**2.** This determination applies whether the law requires a general or specific intent to attempt to enter the United States.

**3.** Some degree of deception is a component of convictions for illegally attempting to re-enter in other circuits. *See, e.g., U.S. v. Chavez–Garcia,* 16 F.Supp.2d 1190 (S.D.Cal.1998) (concerning a defendant charged with illegally attempting to re-enter by falsely claiming to immigration officers at a port of entry that he was a United States citizen); *U.S. v. Esparza–Ponce,* 7 F.Supp.2d 1084 (S.D.Cal.1998) (concerning a defendant charged with attempting to enter by falsely claiming United States citizenship).

**4.** A persons acts with specific intent when his or her "conscious objective is to cause the specific result proscribed by the statute defining the offense." 22 C.J.S. *Criminal Law* § 33 (1989) (*footnotes omitted*). "A specific criminal intent ... may be inferred from the direct and natural tendency of the act." *Id.* (*footnotes omitted*). A general intent crime is one that "prohibits either a specific voluntary act or something that is substantially certain to result from the act." *Id.* at § 32 (*footnotes omitted*). As a general proposition, all attempts are specific intent crimes. *See* 1 WITKIN & EPSTEIN, CAL.CRIMINAL LAW § 415 at 163 (2d ed. Supp.1997).

rea. However, when a defendant is found *within* the United States, it is clear that specific intent is *not* a required element of 8 U.S.C. § 1326. The Fifth Circuit in *U.S. v. Trevino–Martinez* held that specific intent was not a required element of the offense of illegally reentering the United States in violation of 8 U.S.C. § 1326. 86 F.3d 65, 68–69 (5th Cir.1996) (*citing U.S. v. Leon–Leon*, 35 F.3d 1428, 1432–33 (9th Cir.1994) (affirming the denial of a motion to dismiss charge of illegal reentry following deportation); *U.S. v. Champegnie*, 925 F.2d 54, 55–56 (2d Cir.1991) (affirming conviction for illegally reentering United States after deportation and making false statement to Immigration and Naturalization Service); *U.S. v. Espinoza–Leon*, 873 F.2d 743, 746 (4th Cir.1989) (affirming conviction for being alien unlawfully found in United States after having been previously arrested and deported); *U.S. v. Miranda–Enriquez*, 842 F.2d 1211, 1212 (10th Cir. 1988) (affirming conviction of illegal entry into United States after deportation); *U.S. v. Hussein*, 675 F.2d 114, 116 (6th Cir. 1982) (affirming the conviction for entry without permission from the Attorney General after deportation)). *But see U.S. v. Anton*, 683 F.2d 1011, 1017 (7th Cir. 1982) (holding that "there is some mental state requirement" for a § 1326 prosecution).

If a person has been deported and is later found within the United States, in most instances it would seem a pointless inquiry to determine whether or not the person had a specific intent to re-enter the United States. It is understandable, therefore, that a person who has been deported and voluntarily reenters the United States without authorization would be found to have the intent required to support a conviction for being "found in" the United States. *See, e.g., U.S. v. Ortiz–Villegas*, 49 F.3d 1435 (9th Cir.1995) (*citing U.S. v. Ayala*, 35 F.3d 423, 426 (9th Cir.1994); *U.S. v. Cupa–Guillen*, 34 F.3d 860, 863 (9th Cir.1994).)

The instant action is distinct from the *Trevino–Martinez* line of cases because the defendant never entered the United States. Rather, the defendant is accused not of an act, but of an attempt to act. In the instant action, to ignore the intent of the defendant would seem illogical. How could the defendant attempt an unintended result?

In fact, to ignore a defendant's specific intent in an attempt-based case would make 8 U.S.C. § 1326 impermissibly self-contradictory. By law, the relevant class of deportees must, in fact, seek permission to apply for re-entry. Without a requirement that a deportee have specific intent to violate the law, any proactive attempt to follow that legally sanctioned and required procedure would actually be illegal "attempt" to re-enter. Such a paradox should not, and cannot, stand.

Thus, like most other attempt-based crimes, a conviction for "attempt" under 8 U.S.C. § 1326 must include an element of specific intent. Absent deception by defendant, only by requiring specific intent to violate the law can a court distinguish between a defendant's desire to follow the law, which must not be a crime, and a defendant's criminal conduct.

The totality of judicial consideration of attempt-based crime supports this reading of 8 U.S.C. § 1326.

It is well settled that as mere preparation is not sufficient to constitute an attempt to commit a crime, the accused must have taken a substantial step beyond mere preparation, by doing something directly moving toward, and bringing him nearer, the crime he *intends to commit*, or, as sometimes stated, there must be some appreciable fragment of the crime committed.

The 'substantial step' required to establish an attempt may be as much, or less than, the actual commission of the crime, but it must be of an unequivocal nature and strongly corroborative of the accused's alleged criminal purpose.

22 C.J.S. *Criminal Law* § 120 (1989)(*footnotes omitted*)(*emphasis added*).

## 2. Defendant's specific intent to attempt to illegally re-enter the United States was not proven beyond a reasonable doubt by the evidence.

In *U.S. v. Mandujano,* the Fifth Circuit held that to be found guilty of a criminal attempt, it is first required that a defendant "must have been acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting." 499 F.2d 370, 376–77 (5th Cir.1974) (*citing U.S. v. Quincy,* 31 U.S. (6 Pet.) 445, 466, 8 L.Ed. 458 (1832); *Wooldridge v. U.S.,* 237 F. 775, 779 (9th Cir.1916); *U.S. v. Baker,* 129 F.Supp. 684, 685 (S.D.Cal.1955); *Giles v. U.S.,* 157 F.2d 588, 590 (9th Cir.1946); *U.S. v. Coplon,* 185 F.2d 629, 633 (2nd Cir.1950); *U.S. v. Noreikis,* 481 F.2d 1177, 1181 (7th Cir.1973); *U.S. v. Heng Awkak Roman,* 356 F.Supp. 434, 437 n. 5 (S.D.N.Y.1973); *People v. Buffum,* 40 Cal.2d 709, 718, 256 P.2d 317 (Cal.1953)). Second, it must be shown that the defendant engaged in conduct strongly corroborative of the firmness of the defendant's criminal conduct and constituting a substantial step toward the commission of the crime. *Id.* at 376 (*citing Wooldridge,* 237 F. at 779; *Lemke v. U.S.,* 211 F.2d 73, 75 (9th Cir.1954); *Baker,* 129 F.Supp. at 685; *Giles,* 157 F.2d at 590; *Gregg v. U.S.,* 113 F.2d 687, 690 (8th Cir.1940); *Coplon,* 185 F.2d at 633; *U.S. v. Robles,* 185 F.Supp. 82, 85 (N.D.Cal.1960); *Noreikis,* 481 F.2d at 1181; *Buffum,* 40 Cal.2d at 718, 256 P.2d 317.) Although pattern jury instructions for the Fifth Circuit do not contain an entry for an attempt to re-enter, the pattern jury charge for "attempt" in criminal cases does track the language of *Mandujano.*[5]

In the only Fifth Circuit case that has a pertinent treatment of attempt to re-enter, the Fifth Circuit in *U.S. v. Cardenas–Alvarez* looked to the deceptive statements and acts of the defendant to affirm a conviction for attempting to enter the United States in violation of 8 U.S.C. § 1326. 987 F.2d 1129, 1132–33 (5th Cir.1993).[6] The court found that it was reasonable for the jury to believe the testimony of the immigration officers, who stated that the defendant had lied about his citizenship and stated that he was returning to Denver, Colorado, where he was born. *Id.* at 1132.

---

**5.** The jury charge provides:

> For you to find the defendant guilty of attempting to commit [the substantive offense], you must be convinced that the government has proved each of the following beyond a reasonable doubt:
> *First:* That the defendant intended to commit [the substantive offense]; and
> *Second:* That the defendant did an act constituting a substantial step towards the commission of that crime which strongly corroborates the defendant's criminal intent.

COMMITTEE ON PATTERN JURY INSTRUCTIONS, DISTRICT JUDGES ASSOCIATION, FIFTH CIRCUIT, PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.32 at 48 (1997 Edition).

**6.** Case law from other circuits provides little assistance in this matter. For example, the Eleventh Circuit addressed the issue in a case in which the defendant arrived at an airport within a month of having been deported and made a statement that "I was told not to come back after five years, and I did, I'm here, just do what you have to do." *U.S. v. Peralt–Reyes,* 131 F.3d 956 (11th Cir.1997). Without any reasoning, the Eleventh Circuit gave a cursory dismissal of the defendant's insistence that attempt was a specific intent crime. Where, once again, the defendant was found in the United States, the court found no merit in any distinction between reentering and attempting to reenter. *Id.* The sole source of authority cited by the Eleventh Circuit was an unreported First Circuit case, *U.S. v. Reyes–Medina,* 53 F.3d 327, 1995 WL 247343 (1st Cir.1995), which concerned a previously deported alien who arrived at an international airport in Puerto Rico and sought to enter the United States by presenting a passport, an Alien Registration Receipt Card, his Social Security Card, and a customs declaration form. In *Reyes–Medina,* the court cited cases concerning convictions of previously deported aliens for *reentering* or being *found in* the United States, not for attempting to reenter. *Id.* at *1. Interestingly, the *Reyes–Medina* court also examined the intent of the defendant to find that the "circumstantial evidence of his intent is sufficient to support the jury's guilty verdict." *Id.* at *2.

The defendant in *Cardenas–Alvarez* also apparently lied initially about not having any identification, and then he produced a Mexican drivers' license. *Id.* The court found that, in light of the fact that it was reasonable for the jury to believe the immigration inspectors over the defendant, the defendant's contention that he was merely inquiring into how he could regain his citizenship "did not create a reasonable doubt as to his *intent.*" *Id.* (*emphasis added.*) Thus, this case is consistent with the determination that in a criminal action for attempt to re-enter the United States, the government must prove the specific intent of the defendant to enter the United States.

 Because there is a *mens rea* requirement for the crime of attempted re-entry, the government must prove that when the defendant approached the port of entry with the intent to get a new resident alien card and answered all questions truthfully, he (1) had criminal intent and (2) had taken a substantial step towards the commission of the crime which strongly corroborated his criminal intent. The government did not bear this burden. There is not sufficient evidence to show that the defendant had the *mens rea* for this crime; nor is there sufficient evidence to show that the defendant had taken a substantial step towards the commission of the crime.

## IV. Conclusion

The court finds the defendant **NOT GUILTY** of the charges against him, as there is insufficient evidence to show that the defendant was attempting to enter the United States in violation of 8 U.S.C. § 1326. Accordingly, it is **ADJUDGED** and **ORDERED** that the defendant is hereby **DISCHARGED**.