**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alfredo GRACIDAS–ULIBARRY,
Defendant–Appellant.**

**No. 98–50610.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1999.

Filed Sept. 27, 1999.

Julie A. Blair, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Larry A. Sebastian, Special Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: BRUNETTI, RYMER, and SILVERMAN, Circuit Judges.

Opinion by Judge RYMER; Concurrence by Judge SILVERMAN.

RYMER, Circuit Judge:

Alfredo Gracidas–Ulibarry appeals his jury conviction and sentence for attempted reentry into the United States following deportation in violation of 8 U.S.C. § 1326. We must decide whether, as he contends, the jury should have been instructed that an attempt to reenter without the Attorney General's consent to the alien's reapplying for admission is a specific intent crime. The statute does not say so, and we (and all other circuits to consider the question save one) have held that reentry in violation of § 1326, which is a regulatory statute, is a general intent crime. We now join those who have also indicated that an attempt to reenter, which the statute treats on a similar footing with entry, likewise requires only general intent. Gracidas–Ulibarry was entitled to a third point for acceptance of responsibility, so we reverse the district court's denial of that additional point; otherwise, we affirm.

I

The morning after he was deported to Mexico through the Calexico Port of Entry, Gracidas–Ulibarry attempted to reenter the United States as a passenger in the rear seat of a vehicle at the San Ysidro Port of Entry. At primary inspection, Gracidas–Ulibarry was asked about his cit-

izenship. He replied that he was a United States citizen but was unable to produce proof of identification. The vehicle was then referred to secondary inspection. At secondary inspection, Gracidas–Ulibarry was again questioned about his citizenship. He stated that his name was "Arturo Cabral Rodriguez," and that he was a United States citizen born in Texas. He also explained that he lacked identification because he had been robbed two weeks earlier.

The immigration inspector ran a computer check using the name Gracidas–Ulibarry had given him. When the inspector returned to the car and confronted him with the information he had uncovered, Gracidas–Ulibarry admitted that he was a citizen of Mexico and that he had been deported previously. Gracidas–Ulibarry was taken to the prosecution unit, where another inspector ran additional immigration checks and conducted a fingerprint comparison to determine Gracidas–Ulibarry's identity. After being read his Miranda rights, Gracidas–Ulibarry was questioned. He admitted that his real name was Alfredo Gracidas–Ulibarry, that he was a citizen of Mexico, that he had been deported the previous day, and that he did not have permission to reenter the United States.

An indictment was returned charging Gracidas–Ulibarry with attempted illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2), and falsely and willfully representing himself to be a citizen of the United States in violation of 18 U.S.C. § 911. A jury convicted Gracidas–Ulibarry on both counts. At sentencing, Gracidas–Ulibarry requested a three-level downward adjustment for acceptance of responsibility. The court instead awarded him a two-level adjustment and sentenced him to 84 months followed by three years of supervised release. Gracidas–Ulibarry timely appeals his § 1326 conviction and sentence.

## II

Gracidas–Ulibarry first argues that the evidence was insufficient to support his conviction because the government failed to prove beyond a reasonable doubt that the Attorney General had not consented to his reapplication for admission to the United States, as § 1326(a)(2) requires. The government offered an Immigration and Naturalization Service (INS) Certificate of Nonexistence of Record to meet its burden, but Gracidas–Ulibarry contends that it was inadequate because it pertains only to INS records and shows only that the INS, and not the Attorney General, had failed to consent.

■ This argument is foreclosed by *United States v. Blanco–Gallegos*, 188 F.3d 1072 (9th Cir.1999). As we held there, "[b]ecause the INS is the Attorney General's agent for immigration matters and specifically for processing applications for permission to reapply for admission into the United States, the jury could reasonably infer from the lack of an application in the INS's A–File that no such application existed." *Id.* at 1075. Here, as in *Blanco–Gallegos*, the INS certified that a search of its automated and nonautomated records systems had revealed "no evidence of the filing of an application for permission to reapply for admission to the United States after deportation, or the granting of such permission, relating to Alfredo Gracidas–Ulibarry, also known as Alfredo J. Gracidas, born January 31, 1962, in Mexico." In addition, Gracidas–Ulibarry attempted reentry at 5:37 AM the morning after he was deported; the clear inference is that he had not received permission to reapply for admission. Based on these facts, the jury could conclude beyond a reasonable doubt that Gracidas–Ulibarry had not sought or received the Attorney General's consent to reapply for admission to the United States.

## III

Gracidas–Ulibarry next argues that attempted reentry must be a specific intent

crime because attempts are always specific intent crimes. For this reason, he submits, to prove attempted reentry after deportation it is necessary to prove that the defendant intended to reenter the United States and that he intended to reenter without the permission of the Attorney General. Thus, in his view, it was reversible error for the district court not to instruct that the government had to show that Gracidas–Ulibarry "intended to reenter the United States without the consent of the Immigration and Naturalization Service."[1]

Section 1326(a) provides that any alien who

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission.

We do not disagree that most attempts are (and should be) specific intent crimes, whether or not the crime attempted includes an element of specific intent. *See,*

e.g., *United States v. Sneezer,* 900 F.2d 177, 179 (9th Cir.1990). As we have explained, the reason is that

[a]ttempts, like aiding and abetting, involve a degree of uncertainty regarding the defendant's purpose to commit the underlying crime-an uncertainty that is not present in the case of a principal who actually commits the crime. Because of that uncertainty, it is reasonable to require proof of a specific intent that would not be required of one who completed the crime.

*United States v. Sayetsitty,* 107 F.3d 1405, 1412 (9th Cir.1997). However, § 1326(a) is different from most ordinary crimes in that it not based on a common law crime but is instead "a regulatory statute enacted to assist in the control of unlawful immigration by aliens. This offense is a typical mala prohibita offense, and since it denounces the doing of an act as criminal, if a defendant voluntarily does the forbidden act, the laws implies the intent." *Pena–Cabanillas v. United States,* 394 F.2d 785, 788–89 (9th Cir.1968).

■ By its terms, § 1326(a) "denounces the doing" of three acts as criminal: entering, attempting to enter, or being found in the United States after being deported without consent of the Attorney General to reapply for admission. It makes no dis-

---

1. Gracidas–Ulibarry requested the following instruction:

The defendant is charged in the indictment with attempting to reenter the United States after having been deported in violation of 8 U.S.C. § 1326. In order for the defendant to be found guilty of the charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant intended to reenter the United States without the consent of the Immigration and Naturalization Service;

Second, the defendant did something which was a substantial step toward committing the crime;

Third, the defendant is not a citizen or national of the United States;

Fourth, the defendant was lawfully deported from the United States;

Fifth, the defendant attempted to reenter the United States without the consent of the Immigration and Naturalization Service.

Instead, the court used Ninth Circuit Criminal Jury Instruction § 9.1.1 (1997), to instruct as follows on the elements:

First, that the defendant is not a citizen of the United States;

Second, that the defendant attempted to reenter the United States on or about December 5, 1997;

Third, that the defendant did something which was a substantial step toward committing the crime;

Fourth, that the defendant previously had been deported from the United States on or about December 4, 1997; and

Fifth, that prior to his attempted reentry the defendant had not received permission from the Attorney General to reapply for admission to the United States.

tinction among the three, treating each as a completed crime.[2] No intent is prescribed for any, and as we said in *Pena–Cabanillas*, "[i]t would be absurd for this court to think that Congress inadvertently left 'intent' out of Section 1326." *Id.* at 790; *see also id.* at 789 & n. 4 (noting the absence of legislative history on whether Congress meant to include language inferring "intent" in § 1326, but also noting that such language was used in other sections of the Immigration and Nationality Act). Accordingly, we held in *Pena–Cabanillas* and have reaffirmed since "that the government does not need to allege specific intent under 8 U.S.C. § 1326." *United States v. Ayala,* 35 F.3d 423, 426 (9th Cir.1994) (considering "found in" prong); *see also United States v. Ortiz–Villegas,* 49 F.3d 1435, 1437 (9th Cir.1995) (recognizing "our long-standing rule that violation of § 1326 requires only a general intent to reenter the United States"); *United States v. Ramos–Quirarte,* 935 F.2d 162, 163 (9th Cir.1991) (repeating that "there is nothing in the statute to suggest that specific intent is an element of the offense").[3] Only general intent is required.[4]

It is clear that an alien who has been deported and voluntarily reenters the United States without authorization has the intent required to support a § 1326 conviction for entry and for being "found in" the United States. *See Ortiz–Villegas,* 49 F.3d at 1437. The same is true for an alien who, like Gracidas–Ulibarry, was deported and voluntarily "attempts to enter" by approaching a port of entry and making a false claim of citizenship.[5] Gracidas–Ulibarry was in a car in line to pass the check point (already miles across the border), falsely told two different immigration inspectors that he was a United States citizen, and gave one of them a false name-a story in which he persisted until confronted with information to the contrary from a computer search. From these facts, the intent to try to reenter-which is itself the crime-is apparent, and the crime and intent to commit it precisely coincide.

We therefore join other circuits in the view that the government need not prove that a defendant had specific intent to violate the statute; all that is required is that a defendant enter or attempt to enter the United States voluntarily without permission. *See United States v. Martus,* 138 F.3d 95, 97 (2d Cir.1998) ("the government need only prove a voluntary act of reentry or attempted reentry by the defendant that is not expressly sanctioned by the Attorney General"); *United States v. Peralt–Reyes,* 131 F.3d 956, 957 (11th Cir.

---

**2.** As the Second Circuit noted in *United States v. Rivera–Ventura,* 72 F.3d 277, 281 (2d Cir. 1995), "[t]he offense of illegal entry or illegal attempt is normally uncomplicated and is completed as soon as the entry or attempt is made."

**3.** All other circuits to consider the question, except for the Seventh (over a dissent by Judge Posner), agree. *See United States v. Henry,* 111 F.3d 111 (11th Cir.1997) (specific intent is not element of offense of illegal reentry in violation of § 1326); *United States v. Trevino–Martinez,* 86 F.3d 65 (5th Cir.1996) (§ 1326 does not require government to prove specific intent); *United States v. Espinoza–Leon,* 873 F.2d 743 (4th Cir.1989) (§ 1326 conviction requires merely voluntary act); *United States v. Hussein,* 675 F.2d 114 (6th Cir.1982) (government need not prove specific intent under § 1326); *United States v. Hernandez,* 693 F.2d 996 (10th Cir.1982) (§ 1326

has no specific intent requirement); *United States v. Newton,* 677 F.2d 16 (2d Cir.1982) (nothing in language or history of § 1326 to suggest government must prove specific intent). *But see United States v. Anton,* 683 F.2d 1011 (7th Cir.1982).

**4.** As we observed in *Pena–Cabanillas,* "[e]ven in a crime requiring no specific intent, a defendant may defend upon the ground that he did no voluntary act; that he was asleep or unconscious at the time an act occurred. We refer to this as 'general intent' to do or not do the act." 394 F.2d at 788 n. 2.

**5.** *See United States v. Cardenas–Alvarez,* 987 F.2d 1129, 1133 (5th Cir.1993) (so describing attempted reentry, as distinguished from actual entry); *cf. United States v. Oscar,* 496 F.2d 492, 493 (9th Cir.1974) ("entry" does not occur until the alien is free from official restraint of customs officials).

1997) (agreeing with *United States v. Reyes–Medina,* 53 F.3d 327 (1st Cir.1995) (unpublished) that there is no merit in the distinction between *attempting* to reenter the United States and reentering); *United States v. Martinez–Morel,* 118 F.3d 710, 713 (10th Cir.1997) ("[T]o obtain a conviction under section 1326(a), the government must prove only that the defendant 1) is an alien; 2) who was arrested and deported; and 3) who thereafter voluntarily reentered, attempted to reenter, or was found in the United States; 4) without the permission of the Attorney General."); *United States v. Cardenas–Alvarez,* 987 F.2d 1129, 1131–32 (5th Cir.1993) ("[T]o obtain a conviction for this offense [attempted re-entry in violation of § 1326], the Government must prove that: 1) the defendant was an alien at the time of the alleged offense; 2) the defendant had previously been arrested and deported; 3) the defendant attempted to enter the United States; and 4) the defendant had not received the express consent of the Attorney General of the United States to apply for readmission to the United States since the time of his previous arrest and deportation."). The district court's instruction was consistent with this authority, and it had no obligation to accept Gracidas–Ulibarry's request for a specific intent instruction "that he intended to reenter the United States without the consent of the Immigration and Naturalization Service."

### IV

■ Gracidas–Ulibarry maintains that the district court erred by failing to award him a third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b)(1) because he confessed on the date of his arrest. The government points out that Gracidas–Ulibarry backtracked by the time of trial, but this argument is also foreclosed by *Blanco–Gallegos.* There, on similar facts, we indicated that regardless of recanting and forcing the government to prepare for trial (which go the question of whether a *two-point* reduction is appropriate under § 3E1.1(a)), the only question with respect to the *third* point is timeliness and completeness of the defendant's statement. Accordingly, we must reverse the district court's denial of the additional one-point reduction under § 3E1.1(b).

### V

■ Finally, Gracidas–Ulibarry argues that the district court erred in applying U.S.S.G. § 2L1.2, which applies to the substantive offense, instead of § 2X1.1, the guideline for attempt offenses. This issue is raised for the first time on appeal, so our review is for plain error.[6] *See United States v. Scrivner,* 114 F.3d 964, 966 (9th Cir.1997). There was none. Section 2L1.2 governs sentencing for § 1326(a) violations, of which attempted reentry is one. *See* U.S.S.G. § 2L1.2, comment; U.S.S.G. App. A. Gracidas–Ulibarry points to no authority that would require treating attempted reentry under § 1326 differently. Therefore, the error about which Gracidas–Ulibarry complains-if any-was not "so clear-cut, so obvious, [that] a competent district judge should be able to avoid it without benefit of objection." *United States v. Turman,* 122 F.3d 1167, 1170 (9th Cir.1997).

**AFFIRMED IN PART; REVERSED IN PART.**

SILVERMAN, Circuit Judge, concurring:

I concur in all but Part III of the majority's opinion.

---

**6.** Gracidas–Ulibarry says that he raised this claim by objecting to the district court's failure to instruct that attempted reentry is a specific intent crime, but his objection does not preserve for appeal the wholly separate question of what guideline the district court should have used in sentencing. *See United States v. Holland,* 880 F.2d 1091, 1095 (9th Cir.1989) ("Holland's blanket objection to the admission of the tape does not preserve an objection to failure to redact the tape.").

It is an axiom of American criminal law that an attempt "includes an element of specific intent even if the crime attempted does not." *United States v. Hadley*, 918 F.2d 848 (9th Cir.1990). As we said in *United States v. Arbelaez*, 812 F.2d 530, 534 (9th Cir.1987):

> [T]he elements of an attempt are (1) intent to engage in criminal conduct and (2) an overt act which is a substantial step towards the commission of the crime.

The government does not have to prove that the defendant knew that his conduct was illegal, just that he intended to complete the crime and that he took a substantial step toward that end. Contrary to what the majority says, this is true even in the case of a regulatory or mala prohibita offense.

> Although the issue has seldom reached the courts, it would seem to follow from the generally accepted notion that intent is required for an attempt that there is no such thing as strict liability attempt. That is, even if the completed crime may be committed without intent, knowledge, recklessness or even negligence, the same is not true of an attempt to commit that crime. An attempt to commit a strict liability offense is thus possible only if it is shown that the defendant acted with an intent to bring about the proscribed result.

2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW, § 6.2 (1986).

We recently applied these basic precepts, at least implicitly, in the context of an attempt reentry case very similar to this one. In *United States v. Blanco-Gallegos*, 1999 WL 635749 (9th Cir. August 23, 1999), an attempted reentry case in which the defense was voluntary intoxication and lack of intent to enter the United States, we held that the evidence was sufficient to establish that the defendant did, indeed, "form[ ] the necessary intent." *Id.* As Judge Dorothy Nelson wrote in her partial concurrence, partial dissent in that case:

> In order to prove that Blanco–Gallegos attempted to reenter the United States, *the government had to prove every element of the crime beyond a reasonable doubt, including that Blanco–Gallegos possessed the specific intent to enter the United States.* See *United States v. Hadley*, 918 F.2d 848, 853 (9th Cir.1990) ("[A]ttempt includes an element of specific intent even if the crime attempted does not.")

*Id.* (D.W. Nelson, J., dissenting in part and concurring in part) (emphasis added.)

The majority argues that the cases from other circuits are legion in holding the other way. Not so. It is true that the 11th Circuit has held that attempted reentry is a general intent crime, but it did so without any analysis whatsoever. *United States v. Peralt–Reyes*, 131 F.3d 956 (11th Cir.1997). Instead of analysis, the court chose to "adopt" (its word) the holding of an unpublished First Circuit case, *United States v. Reyes–Medina*, 53 F.3d 327 (1st Cir.1995) (unpublished). In *Reyes–Medina*, the court merely (and correctly) held that the government did not have to prove that the defendant knew that Puerto Rico was part of the United States for reentry purposes. All but one of the other out-of-circuit cases cited by the majority deal with the *completed* crimes of illegal reentry and of "being found in"—not *attempted* illegal reentry.[1] I agree that the completed offenses are general intent crimes requiring only proof that the defendant acted voluntarily. Those cases do not address

---

1. See *United States v. Henry*, 111 F.3d 111 (11th Cir.1997) (found in the United States); *United States v. Trevino–Martinez*, 86 F.3d 65 (5th Cir.1996) (same); *United States v. Espinoza–Leon*, 873 F.2d 743 (4th Cir.1989) (same); *United States v. Hussein*, 675 F.2d 114 (6th Cir.1982) (cannot tell from the facts of the case whether the defendants were attempting to reenter, found in the United States or entered the United States); *United States v. Hernandez*, 693 F.2d 996 (10th Cir. 1982) (found); *United States v. Newton*, 677 F.2d 16 (2d Cir.1982) (same).

the *attempted* reentry problem. The one other attempted reentry case cited by the majority deals with the sufficiency of the evidence, not with the intent issue.[2]

As far as I can tell, the only reported decision in the country actually to analyze whether attempted illegal reentry requires proof of specific intent is *United States v. Morales–Tovar*, 37 F.Supp.2d 846 (W.D.Tex., 1999), and it holds that it does. In that case, after examining the statute and distinguishing the cases dealing with the completed crimes of illegal reentry and of being found in, Judge Justice held:

> Thus, like most other attempt-based crimes, a conviction for "attempt" under 8 U.S.C. § 1326 must include an element of specific intent. Absent deception by defendant, only be requiring specific intent to violate the law can a court distinguish between a defendant's desire to follow the law, which must not be a crime, and a defendant's criminal conduct.

> The totality of judicial consideration of attempt-based crimes supports this reading of 8 U.S.C. § 1326.

*Id.* at 851.

The irony of our case is that for all of the sound and fury, the district judge did indeed give a specific intent instruction. The instruction actually given closely mirrors the instruction requested by the defense and the well-recognized pattern instruction on attempt. *See* 2 EDWARD J. DEVITT ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 21.03 (4th ed.1990). The judge instructed the jury that it would have to find (1) that the defendant "attempted to reenter the United States on or about December 5, 1997" and (2) "that the defendant did something which was a substantial step toward completing the crime." This is a variant of the standard two-part "intent plus substantial step" definition of attempt set forth in *United States v. Arbelaez*, supra. Although it would have been more accurate and consistent with our

cases for the district court to have instructed the jury that it had to find that the defendant *intended* to enter the United States, instead of that he *attempted* to enter, the district court's formulation adequately, albeit imperfectly, conveyed the idea. And certainly the evidence of both the defendant's intent to enter, and of the steps he took toward that end, is overwhelming.

The majority's holding that attempted reentry is a general intent crime is as unnecessary as it is erroneous, and it needlessly muddies the waters of attempt law. Since the instruction was an adequate statement of the law, I would hold that there was no reversible error in giving it.