# United States Court of Appeals
## For the First Circuit

—————————————————

No. 00-1068

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

PLÁCIDO CABRAL, ETC.,

Defendant, Appellant.

—————————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

—————————————————

Before

Torruella, Chief Judge,
Lipez, Circuit Judge,
García-Gregory,[*] U.S. District Judge.

—————————————————

Yasmín Irizarry, Assistant Federal Public Defender, with whom Joseph C. Laws, Jr., Federal Public Defender, was on brief, for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, Jorge E. Vega-Pacheco, Chief, Criminal Division, Assistant United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, were on brief, for appellee.

—————————————————

———————————

[*]    Of the District of Puerto Rico, sitting by designation.

June 12, 2001

_____

**GARCÍA-GREGORY, District Judge**.  Plácido Cabral was convicted, following a jury trial, for attempting to re-enter the United States after having been previously arrested and deported, in violation of 8 U.S.C. § 1326.  On appeal, Cabral argues that the district court erred in denying his motion for acquittal because he did not attempt to re-enter the United States, and because he lacked a specific intent to do so, as the statute allegedly requires.  Cabral also contends that the district court erred by failing to instruct the jury on specific intent as an element of the offense.  We affirm.

## BACKGROUND

In 1988, Cabral was arrested and deported to the Dominican Republic.  Prior to his deportation, the immigration authorities explained to him the process by which he could seek permission to re-enter the United States, which included obtaining consent from the United States Attorney General before commencing travel to the United States.  When Cabral showed up at the detention facility prior to his deportation, he did not have his alien resident card with him; thus, he did not turn it over before returning to the Dominican Republic.  Following his deportation, the INS revoked Cabral's resident alien status, thereby invalidating his card, which had a 2002 expiration date.

On May 19, 1999, Cabral arrived at the immigration booth at the San Juan International Airport.  Cabral handed the immigration

-3-

inspector his invalid alien resident card, a Dominican passport lacking any type of visa or other authorization to enter the United States, and a Customs Declaration form featuring a Puerto Rico address as his alleged "Place of Residence." Cabral did not advise the authorities about his deportation status at that time. When the immigration inspector entered Cabral's information into the system, he learned that a person with Cabral's name and birthdate had been previously deported. As a result, Cabral was taken to a secondary inspection area. Once there, the immigration inspectors retrieved from him a one-way ticket from the Dominican Republic to Puerto Rico, and $4.10 in cash. Cabral carried no credit cards.

The inspector asked Cabral whether he had experienced any previous problems with the authorities, particularly the immigration authorities. Cabral replied he had not. After taking his fingerprints and advising him that a positive FBI match would be regarded as lying to a federal law enforcement officer, the inspector asked Cabral whether he wished to reconsider his answer. Cabral did so and acknowledged his prior deportation. Cabral also admitted that he had been advised about the need to obtain the express consent of the Attorney General prior to re-entering the United States. Cabral admitted that he had not yet sought a waiver, but said he wished to do so at that time. Cabral was thereafter placed under arrest for illegally seeking re-entry into the United States.

On September 2, 1999, after a two-day trial, the jury found Cabral guilty of violating 8 U.S.C. § 1326. The district court sentenced Cabral to a prison term of 96 months, with a three-year supervised release term.

**STANDARD OF REVIEW**

In determining the sufficiency of the evidence, "we view the facts and witness credibility determinations, as well as draw reasonable inferences, in favor of the government." United States v. Freeman, 208 F.3d 332, 337 (1st Cir. 2000). As long as the evidence, taken as a whole, warrants a judgment of conviction, the evidence is legally sufficient. Id.; see United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995). Since Cabral timely objected to the district court's failure to instruct on specific intent as an element of the offense, his challenge is subject to harmless error review. Scarfo v. Cabletron Sys. Inc., 54 F.3d 931, 939 (1st Cir. 1995).

**DISCUSSION**

The government charged Cabral with a violation 8 U.S.C. § 1326, which prohibits attempted re-entry into the United States by a deported alien. In order to obtain a conviction for this offense, the government was required to prove four elements:(1) that Cabral was an alien at the time of the alleged offense;(2) that he had previously been arrested and deported; (3) that he attempted to enter the United States; (4) that he had not received the express consent of the

-5-

Attorney General of the United States to apply for readmission to the United States since the time of his previous arrest and deportation. See United States v. Cardenas-Alvarez, 987 F.2d 1129, 1131-32 (5th Cir. 1993).

The principal question on appeal is whether the evidence supports a finding that Cabral attempted to re-enter illegally into the United States. Cabral does not dispute that he was an alien at the time of his arrest, that he had been previously arrested and deported to the Dominican Republic, and that he did not receive advance consent from the Attorney General of the United States prior to arriving at the port of entry. Nonetheless, Cabral contends that his intent was not to re-enter the United States but rather to request permission at the port of entry. Had the immigration inspectors informed him that he could not obtain permission to enter at the port of entry, he argues, he would have returned to the Dominican Republic.

The evidence presented at trial belies Cabral's contention. Upon his arrival at the port of entry, Cabral made no immediate effort to inform the authorities about his deportation status. Instead, he handed immigration authorities an invalid alien resident card (which appeared valid on its face and had a 2002 expiration date), a Dominican passport without a visa, and a Customs Declaration form with a Puerto Rico address as his putative place of residence. At no point during the time he spent at the initial inspection area did Cabral indicate

that he was merely there to request a waiver from the Attorney General. It was only at the secondary inspection point – and even then after some prodding - that Cabral finally divulged his deportation status.

An alien who has been deported and, without prior authorization, voluntarily approaches a port of entry and makes a false claim of residency has attempted to re-enter the United States and, therefore, has the required intent to support a conviction under § 1326. See United States v. Gracidas-Ulibarry, 192 F.3d 926, 930 (9th Cir. 1999); Cardenas-Alvarez, 987 F.2d at 1133. Here, the evidence supports a finding that Cabral's actions were designed to convince the immigration authorities that he was entitled to enter the United States. Cabral sought to pass himself off as a legal resident by making a false claim of residency at the port of entry.[1] Moreover, Cabral's suggestion that he merely intended to request a waiver from the Attorney General and, if rebuffed, to return to the Dominican Republic, is disingenuous. The evidence shows that Cabral had only a one-way ticket from Santo Domingo to Puerto Rico and less than five

---

[1]     It should also be noted that, in light of Cabral's deportation status, he was required to obtain a visa from the Dominican authorities, *in addition* to the Attorney General's consent, prior to departing to Puerto Rico. A visa would not have been required, however, had Cabral shown his seemingly valid alien resident card. Thus, it appears likely that he was able to depart from the Dominican Republic without a visa by using his canceled alien resident card.

dollars in his possession – simply not enough to return, even if he wanted to do so.

Cabral's actions at the port of entry show that he attempted to deceive the immigration authorities into allowing him to re-enter the country. He knew that he was required to obtain permission from the Attorney General prior to coming to the United States, but failed to do so. He knew (or should have known) that his alien resident card was no longer valid, yet he tried to use it at the port of entry. In all likelihood, Cabral realized that the chances that he would obtain permission were slim, and he decided to take a calculated risk in order to meet with his family. Unfortunately, his strategy backfired. He now must face the consequences of his actions. The evidence amply supports the jury's finding that Cabral attempted to re-enter the United States in violation of 8 U.S.C. § 1326.

Cabral next contends that the government was required to prove that he had a specific intent to re-enter the United States, and, as a corollary, that the district court should have instructed the jury on specific intent as an element of the offense. Cabral's argument that § 1326 contains a specific intent requirement has not been well received by the courts. Of the ten circuit courts that have considered whether the government is required to prove that a defendant had a specific intent to reenter the United States, nine have said it is not. See United States v. Soto, 106 F.3d 1040, 1041 (1st Cir. 1997); see

also United States v. Martus, 138 F.3d 95 (2d Cir. 1998)(per curiam); United States v. Espinoza-Leon, 873 F.2d 743 (4th Cir. 1989); United States v. Guzman-Ocampo, 236 F.3d 233 (5th Cir. 2000); United States v. Hussein, 675 F.2d 114 (6th Cir. 1982); United States v. Gonzalez-Chavez, 122 F.3d 15 (8th Cir. 1997); United States v. Ayala, 35 F.3d 423 (9th Cir. 1994); United States v. Hernandez, 693 F.2d 996 (10th Cir. 1982); United States v. Henry, 111 F.3d 111 (11th Cir. 1997); cf. United States v. Anton, 683 F.2d 1011 (7th Cir. 1982)(2-1 decision)(Posner, J., dissenting).

We need go no further. Even if we decided to entertain the specific intent issue (which appears to have been squarely rejected by the Soto Court in any event), the evidence here is sufficiently strong to support a finding that Cabral specifically intended to re-enter the United States.

Accordingly, the district court's denial of Cabral's motion for acquittal, and the decision not to instruct the jury on specific intent as an element of the offense, was proper.

### CONCLUSION

The judgment of the district court is affirmed.